



ORIGINAL

Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Attorneys for Plaintiffs

Daniel H. Marti; dmarti@kilpatrickstockton.com
Patrick Eagan; peagan@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202.508.5800
Facsimile: 202.585.0033

William H. Brewster; bbrewster@kilpatrickstockton.com
R. Charles Henn Jr.; chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Facsimile: 404.815.6555

Of Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC. and ADIDAS AG, | CV'09 - 661 - - MO NO. |
| Plaintiffs, | **COMPLAINT** (Trademark Infringement, Unfair Competition, Trademark Dilution, Deceptive Trade Practices, and Breach of Contract) |
| v. | |
| HERBALIFE INTERNATIONAL, INC., | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

1- COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas" or "Plaintiffs") state the following for their complaint against Herbalife International, Inc. ("Herbalife" or "Defendant").

## I.  INTRODUCTION

1.      This is an action at law and in equity for breach of contract, trademark infringement and dilution, injury to business reputation, unfair competition, and deceptive trade practices, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et. seq. ("Lanham Act"); the antidilution laws of several states, including the Oregon antidilution statute, O.R.S. § 647.107; the fair business practices and unfair and deceptive trade practices acts of several states; and the common law.

2.      adidas is the owner of the famous and distinctive Trefoil Mark, depicted below, which is and has been used for a variety of goods, including sports apparel, accessories and equipment:



3.      Defendant is using, and seeking to broadly register, the Tri-Leaf Mark, depicted below, in connection with sports apparel, accessories and equipment:



4.      Defendant is doing so despite having entered into a contract with adidas on July 10, 1998, in which Defendant agreed that "it will not use and register its TRI-LEAF Mark on

2-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

footwear, sports apparel, sports accessories or equipment," and in which Defendant further agreed "to avoid any activity which might be likely to lead to confusion" with adidas. Defendant's merchandise and sports sponsorships under the Tri-Leaf mark are likely to cause confusion and to deceive consumers and the public regarding its source or affiliation, and Defendant's merchandise and activities dilute and tarnish the distinctive quality of adidas's famous Trefoil Mark. Defendant's broad trademark filing program consists of trademark applications that include, or otherwise fail to expressly exclude, the goods prohibited by the contractual agreement between the parties.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court has subject matter jurisdiction over adidas's related state and common-law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

6.    This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has distributed or sold infringing merchandise within this State, has engaged in acts or omissions within this State causing injury, has engaged in acts or omissions outside of this State causing injury within this State, has manufactured or distributed products used or consumed within this State in the ordinary course of trade, or has otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction.

7.    This District is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to adidas's claims occurred in this District.

## III.    THE PARTIES

8.    Plaintiff adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postfach 1120, D-91072 Herzogenaurach, Federal Republic of Germany. adidas AG was

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

formerly known under the name of "adidas-Salomon AG," the party named in the Agreement (as defined below).

9.     Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217.  adidas America, Inc., is wholly-owned by adidas AG and its affiliates, and within this country adidas America, Inc. is a licensed distributor of ADIDAS-brand merchandise, including goods bearing the distinctive Trefoil Mark.

10.     On information and belief, Defendant Herbalife International, Inc. is a corporation organized and existing under the laws of the state of Nevada with a principal place of business at 1800 Century Park East, Los Angeles, California 90067.

## IV.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

11.     adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, apparel, and sporting equipment.  More than thirty-five years ago, adidas first placed what it refers to as the "Trefoil" symbol on its athletic shoes and apparel, among other goods.  The Trefoil symbol first appeared on adidas products at least as early as 1972.  The symbol consists of three leaves, intersected by three stripes.  A representative image of the registered Trefoil symbol (hereinafter, the "Trefoil Mark") is depicted below:



12.     Since its introduction, the Trefoil Mark quickly came to signify the quality and reputation of adidas sportswear.  Pages from adidas catalogs featuring sportswear bearing the Trefoil Mark are attached as **Exhibit 1**.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

13.     adidas is the owner of a federal trademark registration, Reg. No. 973,161, issued by the United States Patent and Trademark Office on November 20, 1973, for the Trefoil Mark, as depicted below, for "tote bags," "specific purposes athletic shoes," and "general purposes sports shoes, sports wear, namely, suits, shorts, pants, tights, shirts, jerseys, socks and gloves."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 2**.

14.     adidas is the owner of a federal trademark registration, Reg. No. 1,310,140, issued by the United States Patent and Trademark Office on December 18, 1984, for the Trefoil Mark, as depicted below, for "sportswear, namely, suits, shorts, pants, tights, shirts, jerseys, socks, gloves, jackets, coats, swimwear, sweaters, cps, pullovers, warm-up suits, rain suits, ski suits, jump suits, boots, shoes, slippers, " and "shoelaces."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 3**.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

15.    adidas is the owner of a federal trademark registration, Reg. No. 3,104,117, issued by the United States Patent and Trademark Office on June 13, 2006, for the Trefoil Mark, as depicted below, for, *inter alia*, "leather and imitations of leather, and goods made from these materials in the nature of bags for general and sport use," "traveling bags for general and sport use," "sports and leisure wear, namely suits, shorts, pants, sweatpants, skirts, shorts, dresses, blouses, shirts, T-shirts, sleeveless tops, polo shirts, vests, jerseys, sweaters, sweatshirts, pullovers, coats, jackets, track suits, training suits, warm-up suits, swimwear, underwear, socks, gloves, scarves, wristbands and belts; headgear, namely caps, hats, visors, headbands; athletic footwear and leisure foot wear, namely boots, sandals, specific purpose athletic shoes and general purpose sports shoes."



A copy of the Certificate of Registration for this mark is attached as **Exhibit 4**.

16.    adidas is also the owner of an International Trademark Registration, Reg. No. 836,756, dated June 25, 2004 and extending to the United States by way of designation under the Madrid Agreement and Protocol, for the Trefoil Mark, covering, *inter alia*, "Clothing" in International Class 25 and "gymnastic and sporting articles" in International Class 28. A copy of the Certificate of Registration for this mark is attached as **Exhibit 5**.

17.    adidas is a world-famous brand in the apparel, sports equipment, and footwear industries. For six decades, adidas has produced high-quality footwear, as well as (for almost as long) high-quality sports equipment and apparel, under a distinctive umbrella of adidas marks. As a result of this long recognition as a market leader, and consistent efforts to publicize adidas

6-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and its marks through sponsorships, endorsements, and the like, adidas's marks have become among the most recognizable brands in the world, enjoying extraordinary goodwill.

18.      adidas's Trefoil Mark is a well-known and famous symbol of adidas's market leadership in the areas of athletic footwear, sportswear, casual wear, and sport equipment. Since the Trefoil Mark first appeared on adidas's footwear, sportswear, and sports equipment in the early 1970s, the use and popularity of the Trefoil Mark has continued to grow. The Trefoil Mark is now the primary symbol of the adidas Originals line, an iconic sportswear and casual wear line.

19.   adidas has used the Trefoil Mark in connection with numerous sponsorships of sports tournaments, events and organizations, as well as professional athletes and collegiate sports teams, including the Olympics, the World Cup, and the National Basketball Association. The Trefoil Mark has also been the subject of successful marketing campaigns featuring, for example, internationally-renowned professional athletes and musicians, such as David Beckham and Robbie Williams. The Trefoil Mark is also often featured by well-publicized celebrity and athlete fashion choices by, for example, Madonna, Lil' Kim, Geri Halliwell, Missy Elliot, Dido, Anna Kournikova, Lindsey Lohan, Gwyneth Paltrow, Craig David, Christina Aguilera, the Bee Gees, Korn, as well as by actors in popular films, such as The Royal Tenenbaums (Ben Stiller), The Honeymooners (Cedric the Entertainer), Primary Colors (John Travolta), Dude Where's My Car (Ashton Kutcher), and Blades of Glory (Will Ferrell). Sample images featuring prominent athletes, musicians, and actors wearing clothing featuring the Trefoil Mark are attached as **Exhibit 6**. Such successful marketing campaigns, sponsorships, celebrity endorsements, and otherwise prominent and extensive use of the Trefoil Mark, has lead to widespread recognition of the Trefoil Mark as a leading and iconic sports and lifestyle brand.

20.      adidas has extensively and continuously used and promoted the Trefoil Mark in connection with athletic footwear, sportswear, casual wear, and sports equipment. In recent years, annual sales of products bearing the Trefoil Mark have totaled in the hundreds of millions

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

of dollars globally, including sales within the United States.  The Trefoil Mark has achieved
international fame and tremendous public recognition.

21.     Since introducing its Trefoil Mark, adidas has spent millions of dollars promoting
the mark and products bearing the mark.  As a result of adidas's continuous and exclusive use of
the Trefoil Mark in connection with its products, the mark enjoys wide public acceptance and
association with adidas, and has come to be recognized widely and favorably by the public as an
indicator of the origin of adidas's goods.  As a result, adidas has built up and now owns valuable
goodwill that is symbolized by the Trefoil Mark.

### V.    DEFENDANT'S UNLAWFUL ACTIVITIES

22.     Well after adidas's first use of its Trefoil Mark, Defendant adopted and began
using a three-leaf logo design, a copy of which is reproduced below (hereinafter, the "Tri-Leaf
Mark"), in connection with nutritional supplements and other health-related products.



23.     In the mid-1990s, Defendant sought to register the Tri-Leaf Mark in a number of
jurisdictions around the world.  In part because of the similarities between the Tri-Leaf Mark and
the Trefoil Mark, adidas commenced trademark opposition proceedings against Defendant's
applications to register the Tri-Leaf Mark.

24.     On July 10, 1998, the parties entered into a binding agreement (the "Agreement")
in which, in exchange for adidas's withdrawal of its then-pending opposition proceedings and
agreement not to object to any then-existing registrations, Defendant agreed, among other points,
as follows:

> 5.     HERBALIFE agrees that it will not use and register its TRI-LEAF
> Mark on footwear, sports apparel, sports accessories or equipment.

8-    COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

6.     HERBALIFE agrees that it will use its TRI-LEAF Mark in combination and in close proximity with the word "HERBALIFE."

7.     HERBALIFE AND ADIDAS agree to avoid any activity which might be likely to lead to confusion between their respective marks. Should any instance of actual confusion nevertheless occur, the parties agree to undertake such steps as may be mutually determined to be necessary and reasonable to prevent recurrence of confusion.

A true and correct copy of the Agreement is attached as **Exhibit 7.**

25.     Subsequent to entering into the Agreement, Defendant expanded its use of the Tri-Leaf Mark in connection with the sponsorship of sports teams and individual athletes, and has caused and is causing the Tri-Leaf Mark to be used directly on such items as sports apparel, sports accessories and/or equipment.

26.     As part of this expansion of use of the Tri-Leaf Mark in connection with sports, on or about August 18, 2007, Defendant registered the domain name <herbalifesports.com>, and began actively promoting the Tri-Leaf Mark in connection with a wide range of sports and athletic activities, including by way of featuring the Tri-Leaf Mark on a wide range of sports apparel, sports accessories and/or equipment.  True and correct copies of screen shots taken from website pages associated with the <herbalifesports.com> domain name are reproduced below:



9-    COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222



27.    As a result of Defendant's sponsorship activities, the Tri-Leaf Mark can now be found on a variety of sports apparel, sports accessories and/or equipment, including in connection with the following sports and/or activities:  soccer, basketball, cycling, volleyball, badminton, running (e.g., triathlons, decathlons, etc.), windsurfing, mountain biking, and kickboxing.

28.    Defendant does not always use the Tri-Leaf Mark in combination and in close proximity with the term "HERBALIFE."

29.    Defendant promotes its sports apparel, sports accessories and/or equipment featuring the Tri-Leaf Mark, and directs consumers to outlets where they can purchase such items featuring the Tri-Leaf Mark.  For example, the home page for Defendant's <herbalifesports.com> domain name prominently features a "Get Your Official LA Galaxy Jersey" link, directing consumers to sites where they can purchase sports apparel featuring the Tri-Leaf Mark.

30.    Defendant also sponsors a number of the same sporting events and/or teams that are sponsored by adidas.  For example, both Defendant and adidas sponsor the LA Galaxy professional soccer team.  As a result, Defendant's trademarks (including the Tri-Leaf Mark)

10- COMPLAINT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

21184-0076/LEGAL16371859.1

appear on soccer jerseys that also feature adidas's trademarks (namely, the three-bars mark and the ADIDAS word mark).

31.    adidas used the Trefoil Mark extensively and continuously before Defendant began using the Tri-Leaf Mark in connection with sports sponsorships, apparel and sports related merchandise.

32.    The sports apparel, sports accessories and/or equipment featuring the Tri-Leaf Mark are similar to and compete with goods sold by adidas, and the parties' goods appear and are sold through overlapping channels of trade.

33.    Defendant's use of a confusingly similar imitation of adidas's Trefoil Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with adidas, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities by adidas.

34.    The likelihood of confusion, mistake, and deception engendered by Defendant's use of the Tri-Leaf Mark in connection with sports sponsorships, including apparel and merchandise associated with or relating to such sponsorships, is causing irreparable harm to the goodwill symbolized by the Trefoil Mark and the reputation for quality that it embodies.

35.    On information and belief, Defendant has also filed broad trademark applications in numerous jurisdictions around the world which consist of the Tri-Leaf Mark, and which include, or otherwise fail to expressly exclude, the goods prohibited by the Agreement.

36.    These filings also manifest Defendant's intent to expand into, and encroach upon, adidas's core apparel, footwear and sports-related business in manner which is likely to cause confusion in the marketplace.

37.    For example, Defendant filed applications to register the Tri-Leaf Mark, as a design element standing alone, in a number of countries, including in Australia (Application No. 1094343) for such goods as "tote bags" in Internal Class 18, "clothing, headgear, footwear" in International Class 25, and "toys, stuffed toys, plastic figurines being toys, games and

11-  COMPLAINT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

playthings" in International Class 28; in Honduras (Application No. 06003537) for such goods as "shirts, hats, cycling jerseys, golf shirts" in International Class 25; and in Zambia (Application No. 05000760) for such goods as "clothing, headgear and footwear, particularly shirts, cloth caps and cloth bags" in International Class 25.

38.    Defendant also filed applications to register the Tri-Leaf Mark as part of a composite mark in a number of countries, including in or for the European Community (Application No. 04927919) for such goods as "clothing, headwear, footwear" in International Class 25 and "toys, stuffed toys, plastic figurines being toys, games and playthings" in International Class 28; and Norway (Application No. 2395771) for such goods as "bags" in International Class 18, "clothes, shoes, hats" in International Class 25, and "playthings, games, plastic figurines" in International Class 28.

39.    These and similar trademark filings constitute a material breach of the Agreement.

40.    adidas has demanded that Defendant honor the Agreement and cease all use of the Tri-Leaf Mark in a manner that is likely to cause confusion.  Despite adidas's informal efforts to compel Defendant's compliance with the Agreement, those efforts have been unsuccessful.

41.    On April 24, 2009, counsel for adidas sent a formal demand letter to Herbalife regarding Herbalife's trademark infringement and dilution, as well as Herbalife's breach of the Agreement.  A true and correct copy of this letter is attached as **Exhibit 8**.

42.    Defendant has failed to take any actions to date to cure its material breaches under the Agreement, and otherwise avoid creating a likelihood of confusion in the marketplace by way of its use of the confusingly similar Tri-Leaf Mark for related, if not identical, goods and services.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

43.    adidas repeats and incorporates by reference the allegations in paragraphs 1-42.

44.    The Agreement between adidas and Defendant is a valid contract.

12- COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

45.    At all relevant times, adidas has performed all of the material terms and conditions required under the Agreement.

46.    Defendant materially breached the Agreement when it used the Tri-Leaf Mark in connection with sports apparel, sports accessories or equipment, as proscribed in Paragraph 5 of the Agreement.

47.    Defendant also materially breached the Agreement when it attempted to broadly register the Tri-Leaf Mark in connection with apparel, footwear, sports equipment, and other goods, as proscribed in Paragraph 5 of the Agreement.

48.    Defendant also materially breached the Agreement when it used the Tri-Leaf Mark in a manner not in combination and in close proximity with the word "HERBALIFE," as required in Paragraph 6 of the Agreement.

49.    Defendant also materially breached Paragraph 7 of the Agreement when it engaged in the complained of activity — including, the use of the Tri-Leaf Mark in connection with apparel and sports equipment or accessories, Defendant's use of a sports-themed website featuring the Tri-Leaf Mark, and Defendant's sponsorships of sports teams, individual athletes and sporting events — which is likely to lead to confusion between the parties' respective marks. Defendant has refused to undertake any meaningful steps to prevent the existence or recurrence of such likely and actual confusion.

50.    Defendant's breach of its contractual obligations is material and has damaged, and continues to damage, adidas in an amount to be determined at trial.  Defendant's ongoing breach of the Agreement and use of the Tri-Leaf Mark — a confusingly similar imitation of adidas's Trefoil Mark — is also inflicting irreparable harm on adidas.

### SECOND CLAIM FOR RELIEF
### (Federal Trademark Infringement)

51.    adidas repeats and incorporates by reference the allegations in paragraphs 1-50.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

52.    Defendant's use of a confusingly similar imitation of adidas's Trefoil Mark, in the form of the Tri-Leaf Mark, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with adidas, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities by adidas.

53.    Defendant has used marks confusingly similar to adidas's federally registered marks in violation of 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to adidas's goodwill and reputation as symbolized by the registered Trefoil Mark, for which adidas has no adequate remedy at law.

54.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's federally registered Trefoil Mark to adidas's great and irreparable injury.

55.    Defendant has caused and is likely to continue causing substantial injury to the public and to adidas, and adidas is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## THIRD CLAIM FOR RELIEF
### (Federal Unfair Competition)

56.    adidas repeats and incorporates by reference the allegations in paragraphs 1-55.

57.    Defendant's use of confusingly similar imitations of adidas's Trefoil Mark has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with adidas, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities by adidas.

58.    Defendant has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion

14- COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

and deception of members of the trade and public and, additionally, injury to adidas's goodwill and reputation as symbolized by the Trefoil Mark, for which adidas has no adequate remedy at law.

59.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Trefoil Mark to the great and irreparable injury of adidas.

60.    Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to adidas, and adidas is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF
### (Federal Trademark Dilution)

61.    adidas repeats and incorporates by reference the allegations in paragraphs 1-60.

62.    adidas has extensively and continuously promoted and used the federally registered Trefoil Mark both in the United States and throughout the world, and the mark had thereby become a distinctive, famous, and well-known symbol of adidas's goods and services well before Defendant began use of the Tri-Leaf Mark in the manner complained of in this Complaint.

63.    Defendant is making commercial use in commerce of marks that dilute and are likely to dilute the distinctiveness of adidas's Trefoil Mark by eroding the public's exclusive identification of this famous mark with adidas, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish adidas's goods and services.

64.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Trefoil Mark or to cause dilution of the Trefoil Mark, to the great and irreparable injury of adidas.

15-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

65.     Defendant has caused and will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous and distinctive Trefoil Mark in violation of 15 U.S.C. § 1125(c), and adidas therefore is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116, and 1117.

### FIFTH CLAIM FOR RELIEF
#### (State Trademark Dilution and Injury to Business Reputation)

66.     adidas repeats and incorporates by reference the allegations in paragraphs 1-65.

67.     adidas has extensively and continuously promoted and used the registered Trefoil Mark both in the United States and throughout the world, and the mark has thereby become a distinctive, famous, and well-known symbol of adidas's goods and services.

68.     Defendant's unauthorized use of adidas's registered Trefoil Mark dilutes and is likely to dilute the distinctiveness of adidas's mark by eroding the public's exclusive identification of this famous mark with adidas, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish adidas's goods and services.

69.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Trefoil Mark or to cause dilution of the Trefoil Mark, to the great and irreparable injury of adidas.

70.     Defendant is causing and will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous and distinctive Trefoil Mark in violation of the Oregon antidilution statute, O.R.S. § 647.107 (2007), as well as the antidilution laws of several states, including Alabama, ALA. CODE § 8-12-17 (2003); Alaska, ALASKA STAT. § 45.50.180 (Michie 2002); Arizona, ARIZ. REV. STAT. ANN. § 44-1448.01 (West 2003); Arkansas, ARK. CODE ANN. § 4-71-213

16- COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(2002); California, CAL. BUS. & PROF. CODE § 14247 (2008); Connecticut, CONN. GEN.
STAT. ANN. § 35-11i(c) (West, 2003); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2002);
Florida, FLA. STAT. ANN. § 495.151 (West 2003); Georgia, GA. CODE ANN. § 10-1-451
(2003); Hawaii, HAW. REV. STAT. ANN. § 482-32 (Michie 2003); Idaho, IDAHO CODE
§ 48-513 (Michie 2002); Illinois, 765 ILL. COMP. STAT. ANN. 1036/65 (2003); Iowa, IOWA
CODE ANN. § 548.113 (West 2003); Indiana, IN. CODE 24-2-1-13.5 (West 2006); Kansas,
KAN. STAT. ANN. § 81-214 (2002); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (West
2003); Maine, ME. REV. STAT. ANN. tit. 10, § 1530 (West 2003); Massachusetts, MASS.
GEN. LAWS. ANN. ch. 110H, § 13 (West 2006); Minnesota, MINN. STAT. ANN. § 333.285
(West 2003); Mississippi, MISS. CODE. ANN. § 75-25-25 (2003); Missouri, MO. ANN. STAT.
§ 417.061(1) (West 2002); Montana, MONT. CODE ANN. § 30-13-334 (2003); Nebraska, NEB.
REV. STAT. ANN. § 87-140 (Michie 2002); Nevada, NV. REV. STAT. 600.435 (2007); New
Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (2003); New Jersey, N.J. STAT. ANN. 56:3-
13.20 (West 2003); New Mexico, N.M. STAT. ANN. § 57-3B-15 (Michie 2002); New York,
N.Y. GEN. BUS. Law § 360-l (2003); Pennsylvania, 54 PA. CONS. STAT. ANN. § 1124 (West
1996); Rhode Island, R.I. GEN. LAWS § 6-2-12 (1992); South Carolina, S.C. CODE ANN.
§ 39-15-1165 (2002); Tennessee, TENN. CODE ANN. § 47-25-513 (2003); Texas, TEX. BUS.
& COM. CODE ANN. § 16.29 (Vernon 2003); Utah, UT. CODE ANN. § 70-3a-403 (2002);
Washington, WASH. REV. CODE ANN. § 19.77.160 (2003); West Virginia, W. VA. CODE
ANN. 47-2-13 (Michie 2003); and Wyoming, WYO. STAT. ANN. § 40-1-115 (Michie 2002).
adidas therefore is entitled to injunctive relief, damages and costs, as well as, if appropriate,
enhanced damages and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

71.     adidas repeats and incorporates by reference the allegations in paragraphs 1-70.

17-  COMPLAINT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

72.      Defendant's unauthorized use of the Tri-Leaf Mark as alleged herein constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 1996 and Supp. 1998); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (1993 & Supp. 1998); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (1994); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (1993); Illinois, 815 ILL. COMP. STAT. ANN. 510/1 to 510/7 (1993); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 1996); Minnesota, MINN STAT. ANN. § 325D.43 to .48 (West 1995); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (1995); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 1995); New York, N.Y. GEN. BUS. Law § 349 (McKinney 1988); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (West 1995); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 1995 & Supp. 1998).

73.      Defendant's unauthorized use of confusingly similar imitations of adidas's Trefoil Mark has caused and is likely to continue to cause substantial injury to the public and to adidas, and adidas is entitled to injunctive relief and to recover actual damages, costs and reasonable attorneys' fees, as well as punitive damages.

### SEVENTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

74.      adidas repeats and incorporates by reference the allegations in paragraphs 1-73.

75.      Defendant's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of adidas unless restrained by this Court.  adidas has no adequate remedy at law for this injury.

76.      On information and belief, Defendant acted with full knowledge of adidas's use of, and statutory and common law rights to, the Trefoil Mark and without regard to the likelihood of confusion of the public created by Defendant's activities.

18- COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

21184-0076/LEGAL16371859.1

77.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Trefoil Mark to the great and irreparable injury of adidas.

78.     As a result of Defendant's acts, adidas has been damaged in an amount not as yet determined or ascertainable.  At a minimum, however, adidas is entitled to injunctive relief, an accounting of Defendant's profits, actual damages, punitive damages, and costs.

### PRAYER FOR RELIEF

WHEREFORE, adidas prays that:

1.     Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined preliminarily and permanently, from:

a.     using the Tri-Leaf Mark, or any other copy, reproduction, colorable imitation, or simulation of adidas's Trefoil Mark on or in connection with footwear, sportswear, casual wear, sports equipment and accessories;

b.     using the Tri-Leaf Mark, or any other copy, reproduction, colorable imitation, or simulation of adidas's Trefoil Mark on or in connection with sporting and athletic events, including sponsorship of individual athletes or teams;

c.     using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with clothing, sports accessories or sports equipment that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by adidas, are sponsored or authorized by adidas, or are in any way connected or related to adidas;

d.     using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with footwear, sportswear, casual wear, sports

19-  COMPLAINT

21184-0076/LEGAL16371859.1

equipment and accessories that dilutes or is likely to dilute the distinctiveness of the trademarks, service marks, names, or logos of adidas;

        e.     passing off, palming off, or assisting in passing off or palming off, Defendant's goods or services as those of adidas, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

        f.     attempting to register the Tri-Leaf Mark, or any other copy, reproduction, colorable imitation, or simulation of adidas's Trefoil Mark, based on a specification of goods or services which includes, or otherwise fails to expressly exclude, the goods or services prohibited in the Agreement.

    2.    Defendant be ordered to abandon, withdraw, or cancel, as the case may be, any and all trademark applications or registrations anywhere in the world that consist of the Tri-Leaf Mark, and consists of clothing, sports accessories or sports equipment (or their equivalents), excepting only such actual trademark registrations as may have existed in the name of Defendant as of July 10, 1998;

    3.    Defendant be ordered to recall all products bearing the Tri-Leaf Mark, or any other confusingly similar mark, which have been shipped by Defendant or under its authority to any corporate customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendant;

    4.    Defendant be compelled to account to adidas for any and all profits derived by Defendant from the manufacture, sale, licensing or distribution of infringing goods as described in this Complaint;

    5.    adidas be awarded all damages caused by the acts forming the basis of this Complaint;

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

6.    Based on Defendant's knowing and intentional use of confusingly similar imitations of adidas's Trefoil Mark, the damages award be trebled and the award of Defendant's profits be enhanced as provided by 15 U.S.C. § 1117(a);

7.    Defendant be required to pay to adidas the costs of and the reasonable attorneys' fees incurred by adidas in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

8.    Based on Defendant's willful and deliberate infringement and dilution of adidas's Trefoil Mark, and to deter such conduct in the future, adidas be awarded punitive damages;

9.    Defendant be required to pay prejudgment interest on all monetary awards; and

10.    adidas have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

adidas respectfully demands a trial by jury on all claims and issues so triable.

DATED:  June 12, 2009

PERKINS COIE LLP

By: _____
       Stephen M. Feldman, OSB No. 932674
       SFeldman@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiffs

21-  COMPLAINT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Daniel H. Marti
Patrick Eagan
KILPATRICK STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202.508.5800
Facsimile: 202.585.0033

William H. Brewster
R. Charles Henn Jr.
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone:  404.815.6500
Facsimile:  404.815.6555

Of Counsel for Plaintiffs

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222





Exhibit 1
Page 1 of 15

men's | metro apparel

E88685 ADI TREFOIL TEE



### Firebird Track Top

history: One of the most iconic and best-selling track tops of all time. The classic Firebird Track Top features contrast 3-Stripes along the sleeves, and a relaxed fit that appeals to the masses. This modern classic is available in a rainbow of colors—you can't go wrong with this best-selling style.

| | |
|---|---|
| 743967 | black : white |
| E14646 | white : light orange |
| E14649 | violett : turquoise |
| E14648 | light scarlet : white |
| E14647 | indigo : white |

price: $65.00 : s3250h
size: S-4XL
fabrication: 100% polyester shiny tricot.

### Firebird Track Pant

history: One of the most iconic and best-selling track pants of all time. The classic Firebird Track Pant features contrast 3-Stripes along the legs, and a relaxed fit that appeals to the masses. This modern classic is available in a rainbow of colors—you can't go wrong with this best-selling style.

| | |
|---|---|
| 743963 | black : white |
| E14639 | white : light orange |
| E14643 | violett : turquoise |
| E14642 | light scarlet : white |
| E14641 | indigo : white |

price: $55.00 : s2750h
size: S-4XL
fabrication: 100% polyester shiny tricot.

Exhibit 1
Page 2 of 15

4



## Trefoil Ringer

history: You can't go wrong with this classic ringer tee—and this vintage washed version has a luxurious soft feel for maximum comfort. The distressed screen print is the perfect sign-off.

**E78105    white : black**
**E78102    violett : turquoise**
**E78104    argentina blue : indigo**

price: $30.00 : s1500h
size: S-4XL
fabrication: 100% cotton single jersey.



## Piqué Polo

history: Originality comes in many colors. These timeless staples of classic adidas style hook up with any look. The basic polo is a favorite when it comes to clean and versatile wardrobe pieces. The 210 g cotton is stylish and comfortable, providing the best of both worlds.

**E14633    black : white : white-black**
**E14629    light scarlet : white : white-light scarlet**
**E14627    indigo : white : white-indigo**
**E14625    white : light orange : light orange-white**
**E14635    violett : turquoise : turquoise-violett**

price: $40.00 : s2000h
size: S-4XL
fabrication: 100% cotton piqué.

Exhibit 1
Page 3 of 15

5

Exhibit 1
Page 4 of 15





### Hooded Flock Track Top

history: Originality comes in many colors. As an integral part of the adidas training collection, the classic Hooded Flock Track Top was originally released in the late 1970s. This is a great trans-seasonal piece and a staple to any wardrobe.

| | |
|---|---|
| 608959 | black : white : white |
| E14577 | light scarlet : white : white |
| E14576 | indigo : white : white |
| E14575 | white : light orange : light orange |
| E14578 | violett : turquoise : turquoise |

price: $65.00 : s3250h
size: S-4XL
fabrication: 87% polyester : 13% cotton interlock.

### adi Board Short

history: These board shorts represent a popular piece of summer clothing, featuring a woven fabric construction, contrast 3-Stripes and logo embroidery. A tiecord on the waist allows a perfect fit.

| | |
|---|---|
| E14063 | cyan |
| E14065 | black |
| E14064 | fango |

price: $40.00 : s2000h
size: S-3XL
fabrication: 100% polyester twill.

### Super Track Top

history: In a shiny tricot fabric, the Super Track Top combines fashion and style with its clean and classic slim fit silhouette. A great addition to any outfit this season.

| | |
|---|---|
| E14048 | black |
| E14045 | white |
| E14043 | turquoise |

price: $65.00 : s3250h
size: S-3XL
fabrication: 87% polyester : 13% cotton interlock.

6

 

### Sparse Neck Tee

history: With a comfortable and soft-hand slubbed jersey, this trendy V-neck shirt is a welcome addition to the range. The chest pocket on the front both looks smart and sets this piece apart from the rest.

**E77852    echo blue**
**E77850    light orange**

price: $35.00 : s1750h
size: S-2XL
fabrication: 100% cotton single jersey.

 

### Cargo Short

history: Cargo shorts always look good—and these woven twill versions are no exception. With a cool cut and style, these feature hook-and-loop closures on the pockets to make sure nothing falls out while you're out and about.

**E78081    sand**
**E78080    black**

price: $70.00 : s3500h
size: S-2XL
fabrication: 100% cotton twill.

 

### Plaid Logo Tee

history: A classic tee gets the plaid treatment to complement the other pieces in the range this season. With a screen-printed application and classic cut, it's a great option for the summer.

**E77831    white**
**E78125    red**

price: $30.00 : s1500h
size: S-2XL
fabrication: 100% cotton single jersey.

Exhibit 1
Page 5 of 15



### Firebird Track Top

history: This classic track top features contrast 3-Stripes along the sleeves and a Trefoil zipper pull. A larger Trefoil on the back completes this modern classic, available in a rainbow of colors.

| | |
|---|---|
| E16494 | white : metallic silver |
| E16492 | matt yellow : white |
| E16499 | black : white |
| E16496 | light aqua : white |
| E16493 | fairway : white |

price: $65.00 : s3250h
size: XS-XL
fabrication: 100% polyester shiny tricot.

### Firebird Track Pant

history: The classic Firebird Track Pant features contrast 3-Stripes along the legs. A relaxed straight pant perfect for chilling or exercise, made from shiny polyester with a brushed soft inner, perfect for that casual sporty look!

| | |
|---|---|
| E16486 | white : metallic silver |
| E16484 | matt yellow : white |
| E16491 | black : white |
| E16488 | light aqua : white |
| E16485 | fairway : white |

price: $55.00 : s2750h
size: XS-XL
fabrication: 100% polyester shiny tricot.

Exhibit 1
Page 6 of 15

4





### Trefoil Hoody

history: Originality comes in many colors. An extremely wearable item, this hoody is made of a soft and comfy fleece with a fun Trefoil print technique. Clean and sporty, it's the perfect garment for lounging this season. Available in an array of colors.

| | |
|---|---|
| E16472 | white : metallic silver |
| E16476 | black : white |
| E16473 | light aqua : white |
| E16471 | fairway : white |
| E16470 | matt yellow : white |

price: $55.00 : s2750h
size: XS-XL
fabrication: 70% cotton : 30% polyester fleece.

### Trefoil Tee

history: Originality comes in many colors. The classic T-shirt design is finished with a bold print of the iconic Trefoil. Sporty, feminine and eye-catching with an updated, tailored fit.

| | |
|---|---|
| E16437 | white : metallic silver |
| E16441 | black : white |
| E16436 | light aqua : white |
| E16435 | fairway : white |
| E16434 | matt yellow : white |

price: $25.00 : s1250h
size: XS-XL
fabrication: 100% cotton single jersey.

Exhibit 1
Page 7 of 15





### adi Firebird Tracksuit

history: Kids Core Basics is a range of direct replicas of our strong sporty adult pieces, executed in multiple colors. This kids' Firebird Tracksuit is presented here in a durable and comfortable French terry fabric that holds true to the original adult version. Comfort and style for the little ones never looked so good!

**E13849    light red**
**E13851    blue**
**E13853    black**

price: $55.00 : s2750h
size: 6M-4T
fabrication: 100% cotton french terry.





### adi Trefoil Tee

history: Kids Core Basics is a range of direct replicas of our strong sporty adult pieces, executed in multiple colors. This bold Trefoil Tee is constructed in a comfortable cotton jersey fabric—a definite winner for the wardrobe this year.

**E13904    black : metallic gold**
**E13906    blue : light aqua**
**E13902    light red : white**

price: $20.00 : s1000h
size: 6M-4T
fabrication: 100% cotton single jersey.




### Graphic Tee Sneaker

history: This Graphic Tee features a fresh main Sneaker take-down graphic on a single jersey construction—ideal for looking good this season.

**E13993    sun**
**E13992    black**

price: $22.00 : s1100h
size: 6M-4T
fabrication: 100% cotton single jersey.

Exhibit 1
Page 8 of 15

12



### Firebird Track Top

history : One of our most iconic and best-selling tracksuits of all time. Available in six colors!

**614449** black : ice grey : metallic silver
**743967** black : white
**612148** mustang brown : slime
**088453** fango : mono yellow
**088604** rubia grey : light scarlet
**299859** dark navy : white

price : $60.00 : s3000h
size : S-4XL
fabrication : 100% polyester shiny tricot.

### Firebird Track Pant

history : One of our most iconic and best-selling tracksuits of all time. Available in six colors!

**614437** black : ice grey : metallic silver
**743963** black : white
**612138** mustang brown : slime
**088450** fango : mono yellow
**088451** rubia grey : light scarlet
**307287** dark navy : white

price : $50.00 : s2500h
size : S-4XL
fabrication : 100% polyester shiny tricot.

### Superstar Track Top

history : Authentic. Original. Classic. The Superstar Tracksuit is the backbone of Originals apparel. Spun here in classic, athletic colors.

**566460** collegiate red : white
**570925** black : white
**654075** dark navy : legacy

price : $60.00 : s3000h
size : S-3XL
fabrication : 100% polyester shiny tricot.

### Superstar Track Pant

history : Authentic. Original. Classic. The Superstar Tracksuit is the backbone of Originals apparel. Spun here in classic, athletic colors.

**566442** collegiate red : white
**743512** black : white
**654088** dark navy : legacy

price : $50.00 : s2500h
size : S-3XL
fabrication : 100% polyester shiny tricot.

Exhibit 1
Page 9 of 15

4

## Firebird Track Top

history : One of our most iconic and best-selling tracksuits of all time. The Firebird has a relaxed fit that appeals to the masses. Available in six colors! See page four for additional colors.

**088453** fango : mono yellow
**088604** rubia grey : light scarlet

price : $60.00 : s3000h
size : S-4XL
fabrication : 100% polyester shiny tricot.

## Firebird Track Pant

history : One of our most iconic and best-selling tracksuits of all time. The Firebird has a relaxed fit that appeals to the masses. Available in six colors! See page four for additional colors.

**088450** fango : mono yellow
**088451** rubia grey : light scarlet

price : $50.00 : s2500h
size : S-4XL
fabrication : 100% polyester shiny tricot.

## Trefoil Print Tee

history : The classic Trefoil tee has been updated with seasonal colors that hook back to some sweet, seasonal footwear.

**204242** neo white
**204240** light scarlet

price : $25.00 : s1250h
size : S-4XL
fabrication : 100% cotton enzyme-washed single jersey.

Exhibit 1
Page 10 of 15

12



## Cargo Zip Hoody

history : This heathered fleece sharp zip hoody comes fully equipped with cargo pockets, a stylish contrast jersey liner and drawcords for an adjustable fit. If you've got the swagger, then carry it off properly by looking the part this season!

209202 beige melange : shade purple
209203 urban melange : celadon grey : lava

price : $80.00 : s4000h
size : S-4XL
fabrication : 70% cotton : 30% polyester brushed-back enzyme-washed fleece.

## Striped Trefoil Tee

history : If you're going to rock the House Party, then this classic Trefoil T-shirt is the perfect way to do it in style. Tradition meets raw elegance with this important piece of the collection.

209194 shade purple : vapour
209195 lava : celadon grey

price : $32.00 : s1600h
size : S-4XL
fabrication : 100% cotton enzyme-washed single jersey.

Exhibit 1
Page 11 of 15





### Logo Firebird Track Top

*history* : One of our most iconic and best-selling tracksuits of all time. The Firebird has a relaxed fit and stylish good looks, now updated with a Trefoil logo on the back.

**027456** celadon grey : calvi
**607633** cargo : indigo
**607659** black : metallic silver
**027457** black : shade purple

*price* : $60.00 : s3000h
*size* : XS-XL
*fabrication* : 100% polyester shiny tricot.

### Firebird Track Pant

*history* : A relaxed straight pant perfect for chilling or exercise, made from shiny polyester with a brushed soft-inner perfect for that casual sporty look!

**607620** cargo : indigo
**607627** black : metallic silver
**027452** celadon grey : calvi
**027454** black : shade purple

*price* : $50.00 : S2500h
*size* : XS-XL
*fabrication* : 100% poly brushed-back tricot.

### Super Girl Track Top

*history* : This classic silhouette has been a true authentic adidas piece, designed in a women's specific fit.

**027194** rave red : white
**627484** black : white

*price* : $60.00 : s3000h
*size* : XS-XL
*fabrication* : 80% nylon : 20% polyester tricot.

### Super Girl Track Pant

*history* : With authenticity and style in mind the Super Girl Pant is a classic sport-inspired piece to complement the Super Girl Track Top.

**027181** rave red : white
**627475** black : white

*price* : $50.00 : s2500h
*size* : XS-XL
*fabrication* : 80% nylon : 20% polyester tricot.

Exhibit 1
Page 12 of 15

4




### Firebreaker Jacket

history : Inspired by the classic Firebird Track Top, this garment uses contemporary fabric to turn an established classic into a modern masterpiece. It has a relaxed fit, Trefoil zip-puller and tonal 3-Stripes along the sleeves. Made from double-knit polyester and a shiny woven overlay on the front, this piece becomes a basic essential.

**608489** running white : metallic silver
**608499** indigo : metallic silver
**608492** cargo : mauve grey

price : $70.00 : s3500h
size : XS-XL
fabrication : 55% cotton : 45% polyester.



### Super Girl Mesh Jacket

history : A new spin on one of adidas' most recognized styles—the Super Girl Track Top. One side features contrast 3-Stripes along the sleeves. The other? A Trefoil graphic in the center back of the track top. The mix of print techniques provide a great value for this new basic essential.

**607818** black : metallic silver : running white

price : $60.00 : s3000h
size : XS-XL
fabrication : 100% polyester tricot.




### CB Fleece Zip Hoody

history : A sporty but casual fleece zip hoody with a basic fit and plenty of style elements: contrasting 3-Stripes on the sleeves, contrast front chest panel and hood tiecords, flock print and embroidery.

**607895** running white : black : metallic silver
**607863** indigo : mauve : cargo

price : $55.00 : s2750h
size : XS-XL
fabrication : 70% cotton : 30% polyester.




### Trefoil Graphic Tee

history : A unique and stylish feminine cotton tee gets remixed with a long fit, tonal 3-Stripes and eye-catching Trefoils on the bottom front and back, utilizing different print techniques. Fun and versatile.

**607754** running white : black : light bone
**607732** cargo : indigo

price : $30.00 : s1500h
size : XS-XL
fabrication : 100% cotton single jersey.

Exhibit 1
Page 13 of 15

7



## Baby Superstar Tracksuit

history : This wee Superstar suit is a snappy style for the mini-hipster in your life. Comfy, sporty and iconic adidas.

**088672** mono pink : fresh pink : white
**088671** mauve tint : white
**088670** pool : white
**088607** dark navy : white
**E19203** rave pink : metallic silver
**E19202** black : metallic silver

price : $45.00 : s3750h
size : 6M-4T
fabrication : 100% polyester shiny tricot.

Exhibit 1
Page 14 of 15

women's | urban | house party

 

### Logo Firebird Track Top

history : One of our most iconic and best-selling tracksuits of all time. The Firebird has a relaxed fit and stylish good looks, now updated with a Trefoil logo on the back.

**027456** celadon grey : calvi
**027457** black : shade purple

price : $60.00 : s3000h
size : XS-XL
fabrication : 100% poly brushed-back tricot.

 

### Firebird Track Pant

history : One of our most iconic and best-selling track-suits of all time. The Firebird has a relaxed fit and stylish good looks.

**027452** celadon grey : calvi
**027454** black : shade purple

price : $50.00 : S2500h
size : XS-XL
fabrication : 100% poly brushed-back tricot.

 

### Lady Lumberjack Coat

history : A feminine take on a classic male silhouette. This satin plaid coat will keep you warm while you are looking hot.

**209056** green grey : chalk 2
**209054** shade purple : chalk 2

price : $110.00 : s5500h
size : XS-2XL
fabrication : 100% polyester satin.

 

### Lady Lumberjack Vest

history : This Lumberjack Vest remixes a classic male piece into a sexy and stylish feminine item. Funky plaid meets a fun satin fabric and faux-fur hood in this fun top—go and wear it in the parks or on the streets!

**209060** green grey
**209057** shade purple : chalk 2

price : $100.00 : s5000h
size : XS-2XL
fabrication : 100% polyester satin.

Exhibit 1
Page 15 of 15

11

# United States Patent Office

**973,161**
**Registered Nov. 20, 1973**

## PRINCIPAL REGISTER
### Trademark

Ser. No. 422,163, filed Apr. 24, 1972



Adidas Sportschuhfabriken Adi Dassler KG (German firm)
Am Bahnhof
Herzogenaurach, near Nurnberg, Germany

For: TOTE BAGS, in CLASS 3 (INT. 18).

For: SPECIFIC PURPOSE ATHLETIC SHOES, in CLASS 22 (INT. CL. 25).

For: GENERAL PURPOSE SPORT SHOES, SPORTS WEAR—NAMELY, SUITS, SHORTS, PANTS, TIGHTS, SHIRTS, JERSEYS, SOCKS, AND GLOVES—in CLASS 39 (INT. CL. 25).

Priority claimed under Sec. 44(d) on German application filed Nov. 10, 1971; Reg. No. 889,076, dated Dec. 23, 1971.

M. E. ABRAMSON, Supervisory Examiner

Exhibit 2
Page 1 of 1

Int. Cls.: 25 and 26

Prior U.S. Cls.: 39 and 40

## United States Patent and Trademark Office

**Reg. No. 1,310,140**
Registered Dec. 18, 1984

## TRADEMARK
### Principal Register



Adidas Sportschuhfabriken Adi Dassler KG (Fed. Rep. of Germany limited partnership)
Am Bahnhof, Herzogenaurach, Fed. Rep. of Germany D-8522

For: SPORTSWEAR—NAMELY, SUITS, SHORTS, PANTS, TIGHTS, SHIRTS, JERSEYS, SOCKS, GLOVES, JACKETS, COATS, SWIMWEAR, SWEATERS, CAPS, PULLOVERS, WARM-UP SUITS, RAIN SUITS, SKI SUITS, JUMP SUITS, BOOTS, SHOES, SLIPPERS, in CLASS 25 (U.S. Cl. 39).

First use Mar. 10, 1972; in commerce Sep. 1974.

For: SHOELACES, in CLASS 26 (U.S. Cl. 40).

First use Nov. 1, 1979; in commerce Nov. 1, 1979.

Owner of U.S. Reg. Nos. 973,161, 1,162,828 and others.

Ser. No. 406,875, filed Dec. 21, 1982.

DEBORAH S. COHN, Examining Attorney

Exhibit 3
Page 1 of 1

Int. Cls.: 9, 14, 18 and 25

Prior U.S. Cls.: 1, 2, 3, 21, 22, 23, 26, 27, 28, 36, 38, 39, 41 and 50

**Reg. No. 3,104,117**

## United States Patent and Trademark Office

Registered June 13, 2006

### TRADEMARK
### PRINCIPAL REGISTER



ADIDAS-SALOMON AG (FED REP GERMANY AKTIENGESELLSCHAFT)
ADI-DASSLER-STRASSE 1-2
D-91704 HERZOGENAURACH
FED REP GERMANY

FOR: OPTICAL APPARATUS AND INSTRUMENTS, NAMELY, EYEGLASSES AND SUNGLASSES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FOR: HOROLOGICAL AND CHRONOMETRIC INSTURMENTS, NAMELY, WATCHES, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FOR: LEATHER AND IMITATIONS OF LEATHER, AND GOODS MADE FROM THESE MATERIALS IN THE NATURE OF BAGS FOR GENERAL AND SPORT USE, NAMELY HANDBAGS, TOTE BAGS, WAIST PACKS, OVERNIGHT BAGS, BACKPACKS, KNAPSACKS AND BEACH BAGS; TRUNKS; TRAVELING BAGS FOR GENERAL AND SPORT USE; LEATHER AND IMITATIONS OF LEATHER AND GOODS MADEFROM THESE MATERIALS, NAMELY, WALLETS, BRIEFCASES, AND KEY CASES, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FOR: SPORTS AND LEISURE WEAR, NAMELY SUITS, SHORTS, PANTS, SWEATPANTS, SKIRTS, SKORTS, DRESSES, BLOUSES, SHIRTS, T-SHIRTS, SLEEVELESS TOPS, POLO SHIRTS, VESTS, JERSEYS, SWEATERS, SWEATSHIRTS, PULLOVERS, COATS, JACKETS, TRACK SUITS, TRAINING SUITS, WARM-UP SUITS, SWIMWEAR, UNDERWEAR, SOCKS, GLOVES, SCARVES, WRISTBANDS AND BELTS; HEADGEAR, NAMELY CAPS, HATS, VISORS, HEADBANDS; ATHLETIC FOOTWEAR AND LEISURE FOOT WEAR, NAMELY BOOTS, SANDALS, SPECIFIC PURPOSE ATHLETIC SHOES AND GENERAL PURPOSE SPORTS SHOES, IN CLASS 25 (U.S. CLS. 22 AND 39).

PRIORITY DATE OF 1-5-2004 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 0836756 DATED 6-25-2004, EXPIRES 6-25-2014.

OWNER OF U.S. REG. NOS. 973,161, 1,310,140, AND 1,428,947.

SER. NO. 79-006,560, FILED 6-25-2004.

ANDREW RHIM, EXAMINING ATTORNEY

Exhibit 4
Page 1 of 1



**WORLD INTELLECTUAL
PROPERTY ORGANIZATION**

34, chemin des Colombettes, P.O. Box 18, CH-1211 Geneva 20 (Switzerland)
Tel.: (41-22) 338 9111 - Facsimile (International Registry of Marks): (41-22) 740 1429
E-mail: intreg.mail@wipo.int - Internet: http://www.wipo.int

**MADRID AGREEMENT AND PROTOCOL**

# CERTIFICATE OF REGISTRATION

The International Bureau of the World Intellectual Property Organization (WIPO) certifies that the
indications appearing in the present certificate conform to the recording made in the International Register
of Marks maintained under the Madrid Agreement and Protocol.

G. Bisson
Head
Examination and Registration Section
International Registrations Administration Department

Geneva, December 9, 2004

## 836 756

*Registration date:* **June 25, 2004**
*Date next payment due:* **June 25, 2014**

adidas-Salomon AG
Adi-Dassler-Strasse 1-2
D-91704 Herzogenaurach
(Germany).

*Legal nature of the holder (legal entity) and place of organization:* Aktiengesellschaft, Allemagne.

*Name and address of the representative:* Lorenz Seidler Gossel, Rechts- und Patentanwälte, Widenmayerstrasse 23, D-80538 München (Germany).



*Classification of figurative elements:*
5.3; 26.11.

*List of goods and services - NCL(8):*

9   Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus.

14   Precious metals and their alloys and goods in precious metals or coated therewith (included in this class) jewellery, precious stones; horological and chronometric instruments.

18   Leather and imitations of leather, and goods made of these materials (included in this class); animal skins, hides; trunks and travelling bags; umbrellas, parasols and walking sticks; whips, harness and saddlery.

25   Clothing, footwear, headgear.

28   Games and playthings; gymnastic and sporting articles (included in this class); decorations for Christmas trees.

*Basic registration:* Germany, 03.03.2004, 304 00 261.5/25.

*Data relating to priority under the Paris Convention:* Germany, 05.01.2004, 304 00 261.5/25.

*Designations under the Madrid Agreement:* Albania, Algeria, Armenia, Austria, Belarus, Benelux, Bhutan, Bosnia and Herzegovina, Bulgaria; China, Croatia, Cuba; Czech Republic, Egypt, France, Hungary, Italy, Kazakhstan, Kyrgyzstan, Liechtenstein, Monaco, Mongolia, Morocco, Poland, Portugal, Republic of Moldova, Romania, Russian Federation, San Marino, Serbia and Montenegro, Slovakia, Slovenia, Spain, Switzerland, Tajikistan, The former Yugoslav Republic of Macedonia, Ukraine, Uzbekistan.

*Designations under the Madrid Protocol:* Antigua and Barbuda, Denmark, Finland, Georgia, Iceland, Ireland, Norway, Sweden, Turkey, United Kingdom, United States of America.

*Declaration of intention to use the mark:* United Kingdom, Ireland, United States of America.

*Date of notification:* 09.12.2004

*Language of the international application:* English

*\* As of the 4th February 2003, the name of Serbia and Montenegro is to be used instead of the Federal Republic of Yugoslavia*

Exhibit 5
Page 1 of 3

**ORGANISATION MONDIALE**
**DE LA PROPRIÉTÉ INTELLECTUELLE**

34, chemin des Colombettes, case postale 18. CH-1211 Genève 20 (Suisse)
Compte de chèques postaux OMPI: N° 12-5000-8 Genève
N° compte bancaire int'l (IBAN) auprès Crédit Suisse, Genève
CH35 0425 1048 7080 8100 0 / Swift Code: CRESCHZZ12A
Tél. (41-22)338 9111  Télécopieur: (41-22) 740 1429
E-Mail: intreg.mail@wipo.int  Internet: http://www.ompi.int



**Arrangement de Madrid**
**et**
**Protocole de Madrid**

LORENZ SEIDLER GOSSEL

Lorenz · Seidler · Gossel Widenmayerstraße 23
Rechts- u. Patentanwaltskanzlei 80538 München
Allemagne

23 Nov. 2006

Notre référence : 926/358240401
Votre référence :

Genève, le 12/11/2006

Enregistrements internationaux concernés : voir au verso

Madame,
Monsieur,

Nous vous informons que la modification du nom ou
l'adresse du titulaire décrite ci-après a été inscrite au
registre international à l'égard des enregistrements
internationaux susmentionnés et sera publiée dans la
"Gazette OMPI des marques internationales" no 45/2006.

Nom et/ou adresse du titulaire :
adidas AG, Adi-Dassler-Strasse 1-2, 91074 Herzogenaurach,
Allemagne

Date d'inscription : 04/10/2006

Bureau international de l'Organisation Mondiale
de la Propriété Intellectuelle (OMPI)

Exhibit 5
Page 2 of 3

Enregistrements internationaux concernés :
0174594 (ADIDAS), 0289063 (ADIDAS), 0300802 (aucun élément
verbal), 0300803 (aucun élément verbal), 0300804 (aucun
élément verbal), 0300805 (aucun élément verbal), 0300806
(aucun élément verbal), 0300807 (aucun élément verbal),
0332782 (AZTECA-GOLD), 0352353 (ADIDAS), 0354439 (ADIDAS),
0356430 (ADIPAN), 0358770 (ADIDAS), 0365299 (MARKE),
0365583 (3-STREIFEN-TRAININGSANZUGE), 0366288 (3 RIEMEN),
0370450 (RIEMEN), 0371058 (ADITURF), 0379405 (ADIDAS),
0379406 (aucun élément verbal), 0381944 (ADI), 0384253
(aucun élément verbal), 0386444 (ADIDAS), 0386491 (aucun
élément verbal), 0389472 (ADIDAS), 0391692 (aucun élément
verbal), 0413986 (ADICOURT), 0414034 (aucun élément
verbal), 0414035 (aucun élément verbal), 0414036 (aucun
élément verbal), 0414037 (aucun élément verbal), 0416129 (A
D I-), 0426376 (aucun élément verbal), 0447243 (DIE
WELTMARKE MIT DEN 3 STREIFEN), 0454571 (STRATOS), 0454775
(ADILETTE), 0469033 (ADIDAS), 0469145 (aucun élément
verbal), 0472447 (ADICOLOR), 0481790 (SPIRIT OF THE GAMES),
0483223 (ADISTAR), 0487580 (ADIDAS), 0491373 (aucun élément
verbal), 0498358 (ADIDAS), 0498359 (aucun élément verbal),
0529090 (TORSION), 0566295 (ADIDAS), 0588920 (ADIDAS),
0588921 (aucun élément verbal), 0588922 (ADIDAS), 0589156
(ADIDAS), 0589157 (STREETBALL), 0591770 (SAMBA), 0602197
(PREDATOR), 0604447 (RESPONSE), 0606224 (TUBULAR), 0620578
(STREETBALL), 0624709 (PREDATOR CUP), 0627663 (ADIDAS),
0627664 (aucun élément verbal), 0629972 (FOOTSCAN), 0635755
(ADICOURT), 0646383 (ADIPRENE), 0650597 (TRAXION), 0651566
(ADI-WEAR), 0667288 (ADIDAS), 0723563 (TORSION), 0730835
(aucun élément verbal), 0787174 (ADIDAS), 0836756 (aucun
élément verbal), 0844881 (STREETBALL), 0876661 (aucun
élément verbal).

Exhibit 5
Page 3 of 3



Exhibit 6
Page 1 of 17



Exhibit 6
Page 2 of 17



Exhibit 6
Page 3 of 17



Exhibit 6
Page 4 of 17



Exhibit 6
Page 5 of 17



Exhibit 6
Page 6 of 17



Exhibit 6
Page 7 of 17



Exhibit 6
Page 8 of 17

Rachel Hunter und
Robbie Williams
in Los Angeles auf dem
Weg zum Bowling –
beide lieben den Sport.
Seit vier Monaten
sind sie unzertrennlich



der **Look**

Soulstar Blu Cantrell
(„Breathe") bei einem Dinner

Rapstar Missy Elliott bei
einer Musikparty in N.Y.

Madonna bei einer
Sitzprivate in L.A.

54    Jade Jagger bei den MOBO
Awards in London

**Streife gehen** (noch: Mädels, Streifen gehen jetzt sogar auf dem roten Teppich. Der legendäre drei Adidas-Streifen, seit 1949 das Abzeichen schwitzender Athleten, schmücken Lipsticke und geschmeidige Turnca, und zieren auch wieder von Stardom wie Anhängerin zwischen Hollywood sport Stars „Casual Gala" und Comeren zu prominent Personenaggregat an maadellossen Sportoutfit. Von Total-Look Miss-Elliott, u. M. bei Sexy Flesh mit Highheels Jade Jagger. Es ist alles zu sehen. Accessoires) Hört kein farmboudel, man greife beherzt zu seiner teuersten Vuitton-Tasche.

Exhibit 6
Page 9 of 17



Exhibit 6
Page 10 of 17



Exhibit 6
Page 11 of 17

People 22-04-2002



Already accustomed to duking it out on the music charts, singers **Lenny Kravitz** (left) and **Usher** took some playful jabs at one another in London, where each taped segments for the BBC music program *Top of the Pops.*

PEOPLE 4/22/02  **15**



Geri Halliwell



Shannon Elizabeth  Ananda Lewis  Kelly Osbourne

## Stripe Happy

Old shoes never looked so good. Ever since Adidas reintroduced its bestselling sneakers from years past, stars like **Kelly Osbourne, Ananda Lewis** and **Gwen Stefani** have gotten in step with their retro cool. "People have an emotional connection," says an Adidas rep. "They're the shoes they wore as a kid." The sneaks have even shown up on the red carpet. "They gave me that old-school hip-hop feeling," Lewis says of the pair she wore recently. "As long as they're cute and sexy, I'm down with it!"

People 07-01-2002

Exhibit 6
Page 12 of 17



Exhibit 6
Page 13 of 17



Exhibit 6
Page 14 of 17



Exhibit 6
Page 15 of 17



People Magazine  10-11-2002

Exhibit 6
Page 16 of 17



Exhibit 6
Page 17 of 17

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter "Agreement") is made this ___10th___ day of ___July___, 1998 by and between Herbalife International, Inc., a Nevada corporation, having a principal place of business at 1800 Century Park East, Los Angeles, California 90067 and its affiliates and subsidiaries (hereinafter "HERBALIFE") and adidas Salomon AG, Adi-Dassler- Str. 1-2, 91074 Herzogenaurach, Federal Republic of Germany and its affiliates and subsidiaries (hereinafter "ADIDAS").

## RECITALS

A.    ADIDAS uses their Trefoil Design mark (hereinafter "TREFOIL Mark") to identify its sports clothing, footwear, accessories and equipment as well as cosmetic products.

B.    HERBALIFE uses its Tri-Leaf Design mark (hereinafter "TRI-LEAF Mark") to identify its weight and nutritional products; skin and personal care products.

C.    HERBALIFE and ADIDAS have filed applications for registration or have registered their respective marks in a number of jurisdictions throughout the world.  In some of these jurisdictions, ADIDAS has filed opposition proceedings against HERBALIFE's applications.

D.    It is the desire of the parties to resolve any dispute between them concerning their respective marks and to allow for the simultaneous use and registration of these marks throughout the world.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the following mutual promises, covenants and conditions, HERBALIFE and ADIDAS agree as follows:

1.    ADIDAS agrees that it will not object to the TRI-LEAF Marks of HERBALIFE which are already registered anywhere in the world.

Exhibit 7
Page 1 of 3

2.      ADIDAS agrees that it will not pursue any action, by way of opposition proceeding or otherwise, with respect to the use or registration of the TRI-LEAF Mark in connection with the name HERBALIFE or its distributors, and that it will withdraw any oppositions it has filed against any application for registration of the TRI-LEAF Mark anywhere in the world without further delay after full execution of this Agreement.  ADIDAS further agrees to execute Letters of Consent as may be requested by HERBALIFE where its TREFOIL Mark has been cited as a bar to the registration of the TRI-LEAF Mark.

3.      HERBALIFE agrees that it will not object to and hereby consents to the use and registration of the TREFOIL Mark by ADIDAS anywhere in the world.

4.      HERBALIFE agrees that it will not pursue any action, by way of opposition proceeding or otherwise, with respect to the use or registration of the TREFOIL Mark by ADIDAS.  HERBALIFE further agrees to execute Letters of Consent as may be requested by ADIDAS where its TRI-LEAF Mark has been cited as a bar to the registration of the TREFOIL Mark.

5.      HERBALIFE agrees that it will not use and register its TRI-LEAF Mark on footwear, sports apparel, sports accessories or equipment.

6.      HERBALIFE agrees that it will use its TRI-LEAF Mark in combination and in close proximity with the word "HERBALIFE."

7.      HERBALIFE and ADIDAS agree to avoid any activity which might be likely to lead to confusion between their respective marks.  Should any instance of actual confusion nevertheless occur, the parties agree to undertake such steps as may be mutually determined to be necessary and reasonable to prevent recurrence of confusion.

8.      This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors, transferees, assigns and legal representatives.

9.      The parties hereto agree that this Agreement contains the entire understanding between HERBALIFE and ADIDAS regarding the matters covered by this Agreement and contemplated herein.  The parties further agree that this Agreement supersedes all other understandings, written or oral, existing between them prior to the date hereof.  No other representations, promises, agreements or undertakings have been made with respect to the subject matter of this Agreement.

-2-

Exhibit 7
Page 2 of 3

10.    No modification or amendment to this Agreement shall be operative or effective unless it is in writing and signed by both of the parties hereto.

11.    Each party hereto agrees to execute such documents as may be necessary to effectuate the terms of this Agreement as may be required by the other party.

Dated: _____July 10_____, 1998

adidas Salomon AG

By _____

Name: Gabriele Dirian  /  Roland Lessig

Title:      Executive Managers

Dated: _____July 17_____, 1998

HERBALIFE INTERNATIONAL, INC.

By _____

Christopher Pair

Executive Vice President and C.O.O.

-3-

Exhibit 7
Page 3 of 3



KILPATRICK
STOCKTON LLP

Attorneys at Law

Suite 900  607 14th St., NW
Washington DC 20005-2018
t 202 508 5800  f 202 508 5858
www.KilpatrickStockton.com

direct dial 202 508 5875
direct fax 202 585 0033
dmarti@kilpatrickstockton.com

April 24, 2009

**Via Fax at (310) 767-3316 and Confirmation Copy by Mail**

Cameron B. Smith, Director
Regulatory & Govt. Affairs & Intellectual Property
Herbalife International
990 W. 190th St., Suite 650
Torrance, CA 90502

     Re:    adidas v. Herbalife

Dear Mr. Smith:

We are intellectual property counsel to adidas.  It is our understanding that Aline Olie from adidas has been in communication with you since at least early February in an attempt to amicably resolve a matter of great, and growing, concern, namely Herbalife's use and registration of a tri-leaf logo design in connection with goods in International classes 25 and 28.  Since it appears that Herbalife has chosen to disregard a number of follow-up communications, and has otherwise gone silent since March 3, 2009, this matter has been forwarded to our attention.

Without repeating all of the points that Ms. Olie raised with you, Paragraph 5 of the Settlement Agreement dated July 10, 1998 (the "Agreement") expressly prohibits Herbalife from any use or registration of the tri-leaf logo design in connection with, among other goods, sports apparel, accessories and equipment.  A copy of the Agreement is enclosed as <u>Attachment A</u> for your ease of reference.  Herbalife is in on-going material breach of this and other provisions of the Agreement.

For example, as part of Herbalife's sponsorship of the LA Galaxy professional soccer team, the tri-leaf logo design is being used on sports jerseys.  Herbalife prominently includes a "Get Your Official LA Galaxy Jersey" link on its home page, directing consumers to purchase sports apparel that features the tri-leaf design.  It is not the sponsorship itself, but the use of the tri-leaf design on sports apparel that is an obvious breach of the Agreement.

Herbalife's expansion into the sponsorship of other sporting events and athletes (www.herbalifesports.com) has led to additional violations of Paragraph 5 to the extent the tri-

US2008 649183.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

Exhibit 8
Page 1 of 15

Cameron B. Smith, Director
Regulatory & Govt. Affairs & Intellectual Property
Herbalife International
April 24, 2009
Page 2 of 2

leaf design is placed on sports apparel and equipment, as well as a violation of Paragraph 7 requiring Herbalife to "avoid any activity which might be likely to lead to confusion[.]"

adidas has provided Herbalife with a generous draft agreement, which would remove any liability for these and other violations, while preserving Herbalife's core business.  A copy of the draft settlement agreement is enclosed as <u>Attachment B</u> for your ease of reference.  To be clear, nothing in the draft agreement prohibits Herbalife from its continued sponsorship of sports teams or athletes, but it must do so (after 2011) without the confusingly similar tri-leaf design.

Given the seriousness of this matter, and Herbalife's unwarranted refusal to cease the complained of behavior to date, we renew our request that Herbalife agree, without further delay, to the terms and conditions contained in attached agreement.  To avoid further action on this matter, we must demand Herbalife's prompt and unequivocal response by **no later than May 8, 2009**.  In the event that we do not receive such response, we will take such actions as are necessary to uphold the Agreement and preserve adidas's valuable trademark interests.

Nothing contained in this letter, nor any act or omission to act by adidas or its related companies, is intended or should be deemed to be a waiver, abridgement, alteration, modification, or reduction of any rights or remedies that adidas or its related companies may have in regard to this matter; all such rights and remedies, whether at law or in equity, are expressly reserved.

Sincerely,

KILPATRICK STOCKTON LLP

By: Daniel H. Marti

Enclosures

cc:   Aline Olie (adidas)
      Bill Brewster (Kilpatrick Stockton LLP)
      Charlie Henn (Kilpatrick Stockton LLP)

# ATTACHMENT A

Exhibit 8
Page 3 of 15

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter "Agreement") is made this ___10th___ day of _____July_____, 1998 by and between Herbalife International, Inc., a Nevada corporation, having a principal place of business at 1800 Century Park East, Los Angeles, California 90067 and its affiliates and subsidiaries (hereinafter "HERBALIFE") and adidas Salomon AG, Adi-Dassler- Str. 1-2, 91074 Herzogenaurach, Federal Republic of Germany and its affiliates and subsidiaries (hereinafter "ADIDAS").

## RECITALS

A.    ADIDAS uses their Trefoil Design mark (hereinafter "TREFOIL Mark") to identify its sports clothing, footwear, accessories and equipment as well as cosmetic products.

B.    HERBALIFE uses its Tri-Leaf Design mark (hereinafter "TRI-LEAF Mark") to identify its weight and nutritional products; skin and personal care products.

C.    HERBALIFE and ADIDAS have filed applications for registration or have registered their respective marks in a number of jurisdictions throughout the world. In some of these jurisdictions, ADIDAS has filed opposition proceedings against HERBALIFE's applications.

D.    It is the desire of the parties to resolve any dispute between them concerning their respective marks and to allow for the simultaneous use and registration of these marks throughout the world.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the following mutual promises, covenants and conditions, HERBALIFE and ADIDAS agree as follows:

1.    ADIDAS agrees that it will not object to the TRI-LEAF Marks of HERBALIFE which are already registered anywhere in the world.

Exhibit 8
Page 4 of 15

2.      ADIDAS agrees that it will not pursue any action, by way of opposition proceeding or otherwise, with respect to the use or registration of the TRI-LEAF Mark in connection with the name HERBALIFE or its distributors, and that it will withdraw any oppositions it has filed against any application for registration of the TRI-LEAF Mark anywhere in the world without further delay after full execution of this Agreement.  ADIDAS further agrees to execute Letters of Consent as may be requested by HERBALIFE where its TREFOIL Mark has been cited as a bar to the registration of the TRI-LEAF Mark.

3.      HERBALIFE agrees that it will not object to and hereby consents to the use and registration of the TREFOIL Mark by ADIDAS anywhere in the world.

4.      HERBALIFE agrees that it will not pursue any action, by way of opposition proceeding or otherwise, with respect to the use or registration of the TREFOIL Mark by ADIDAS.  HERBALIFE further agrees to execute Letters of Consent as may be requested by ADIDAS where its TRI-LEAF Mark has been cited as a bar to the registration of the TREFOIL Mark.

5.      HERBALIFE agrees that it will not use and register its TRI-LEAF Mark on footwear, sports apparel, sports accessories or equipment.

6.      HERBALIFE agrees that it will use its TRI-LEAF Mark in combination and in close proximity with the word "HERBALIFE."

7.      HERBALIFE and ADIDAS agree to avoid any activity which might be likely to lead to confusion between their respective marks.  Should any instance of actual confusion nevertheless occur, the parties agree to undertake such steps as may be mutually determined to be necessary and reasonable to prevent recurrence of confusion.

8.      This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors, transferees, assigns and legal representatives.

9.      The parties hereto agree that this Agreement contains the entire understanding between HERBALIFE and ADIDAS regarding the matters covered by this Agreement and contemplated herein.  The parties further agree that this Agreement supersedes all other understandings, written or oral, existing between them prior to the date hereof.  No other representations, promises, agreements or undertakings have been made with respect to the subject matter of this Agreement.

-2-

Exhibit 8
Page 5 of 15

10. No modification or amendment to this Agreement shall be operative or effective unless it is in writing and signed by both of the parties hereto.

11. Each party hereto agrees to execute such documents as may be necessary to effectuate the terms of this Agreement as may be required by the other party.

adidas Salomon AG

Dated: _____July 10_____, 1998

By _____
Name: Gabriele Dirian / Roland Lessig
Title: Executive Managers

HERBALIFE INTERNATIONAL, INC.

Dated: _____July 17_____, 1998

By _____
Christopher Pair
Executive Vice President and C.O.O.

-3-

Exhibit 8
Page 6 of 15

# ATTACHMENT B

Exhibit 8
Page 7 of 15

**DRAFT**

**AGREEMENT**

THIS AGREEMENT is made and entered into this _____ day of _____, 2009 (the "Effective Date"), by and between adidas AG, on behalf of itself and its affiliates, including adidas International Marketing B.V. (collectively, "adidas") on the one hand, and Herbalife International, Inc., on behalf of itself and its affiliates, including but not limited to all of its subsidiary companies ("Herbalife") on the other hand.  Herbalife and adidas collectively are referred to herein as the "Parties."

WHEREAS, adidas extensively has used and promoted a three leaf trade mark known as the trefoil, in connection with various products including but not limited to clothing, footwear, headgear, bags, sports equipment, cosmetic products, eyewear and watches, and is the owner of numerous valid and subsisting trade mark registrations covering the mark.  Set out in <u>Exhibit 1</u> to this Agreement are representations of the trefoil trade mark (collectively, the "Trefoil Mark");

WHEREAS, Herbalife extensively has used and promoted a three leaf trade mark in connection with various products including weight, nutritional, skin and personal care products, and multi-level marketing services and opportunities, and is the owner of valid and subsisting trade mark registrations covering the mark.  Set out in <u>Exhibit 2</u> to this Agreement is an example of the Herbalife three leaf trade mark (the "Herbalife Tri-leaf Mark");

WHEREAS, adidas has filed opposition procedures against one or more applications to register the Herbalife Tri-leaf Mark in the name of Herbalife, as listed in <u>Exhibit 3</u> (the "Opposition Procedures");

WHEREAS, on July 10, 1998, the Parties entered into an Agreement concerning the co-existence of the Trefoil Mark and the Herbalife Tri-leaf Mark (the "1998 Agreement");

WHEREAS, the Parties desire to terminate the 1998 Agreement, and enter into a new Agreement concerning the use and registration of the Trefoil Mark and the Herbalife Tri-leaf Mark;

NOW, THEREFORE, for good and valuable consideration the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    <u>Co-Existence.</u>

    1.1    The Parties agree to the co-existence of the Trefoil Mark and Herbalife Tri-leaf Mark, whereby Herbalife shall own registrations and make use of the Tri-Leaf Mark for dietetic, weight control, nutritional, skin and personal care products, in International classes 3, 5, 29, 30 or 32 and whereby adidas shall own registrations and make use of its Trefoil Mark for clothing, footwear, headgear in International class 25, bags in International class 18, sports equipment in International class 28, cosmetic products in International class 3, eyewear in International class 9 and watches in international class 14. This co-existence is conditional upon the Parties' compliance with the terms of this Agreement.

Exhibit 8
Page 8 of 15

1.2     The Parties hereby terminate the 1998 Agreement as of the Effective Date, after which date it shall have no further force or effect.

2.      Avoidance of Confusion.

2.1     Undertakings by adidas.

2.1.1 adidas will not object to the registrations of the Herbalife Tri-leaf Mark in International classes 3, 5, 29, 30 and 32 whether standalone or as a composite with anything else, which are already registered anywhere in the world at the Effective Date

2.1.2 Within thirty (30) calendar days of the Effective Date, adidas will instruct its trademark agents to withdraw the Opposition Procedures, on the basis that each Party shall bear its own costs of the Opposition Procedures, and of their withdrawal.

2.1.3 adidas will not file oppositions against pending or new applications by Herbalife to register the Herbalife Tri-leaf Mark whether standalone or as a composite mark with anything else (e.g. the word HERBALIFE) covering (a) goods and/or services in International classes 3, 5, 29, 30 or 32; or (b) covering goods in International class 18, provided that the specification of goods does not include any luggage or bags other than bags for use in connection with weight and nutritional products or with skin and personal care products. Adidas reserves the right to oppose any such pending or new application, however, if the Tri-leaf is filed as a composite with another word or device which adidas considers to be confusingly similar to any of its trademarks other than the Trefoil Mark.

2.2     Undertakings by Herbalife.

2.2.1 Herbalife will not object to the registrations of the Trefoil Mark which are already registered anywhere in the world at the Effective Date.

2.2.2 Herbalife will not register or apply to register anywhere in the world the Herbalife Tri-Leaf Mark whether standalone or as a composite mark with anything else (e.g. the word HERBALIFE) for any goods in International classes 25 or 28. Herbalife will withdraw all applications, and cancel all registrations anywhere in the world which do not comply with the foregoing provision of Clause 2.2.2.

2.2.3 Herbalife will not use the Herbalife Tri-Leaf Mark whether standalone or as a composite mark with anything else (e.g. the word HERBALIFE) on or in relation to any goods in International classes 25 or 28, with the exception of apparel products manufactured by or for Herbalife which are either:

a.  Only for promotional purposes where the total quantity per article design produced is no more than 100 items, or

Exhibit 8
Page 9 of 15

    b.   Are sold only to Herbalife independent distributors through non-retail channels for their own use, and have the HERBALIFE word on such apparel, either in close proximity or at least clearly in the same field of vision of the Herbalife Tri-Leaf Mark on such apparel.

    c.   L.A. Galaxy shirts in the design shown in Exhibit 4, until the end of the 2011 season, but not thereafter.

    d.   Jerseys of teams or athletes sponsored by Herbalife, where retail sales of such jerseys is less than 1000 units worldwide, until the end of the 2011 season, but not thereafter.

For the avoidance of doubt, and except in the case of the LA Galaxy shirts and jerseys of teams and athletes referred to in paragraphs c and d above, it is understood between the Parties that Herbalife will not use or permit other third parties the use of the Herbalife Tri-Leaf Mark whether standalone or in combination with anything else (e.g. the word HERBALIFE) on or in relation to any goods in International class 25 or 28 whose purpose is to promote the Herbalife company and/or its products or services and where the products in International class 25 or 28 are offered for sale in commercial quantities and/or in normal retail channels anywhere in the world.

2.2.4   Herbalife will not use or apply to register the Herbalife Tri-Leaf Mark whether standalone or in combination with anything else (e.g. the word HERBALIFE) for any goods in Int. class 18, except for 'bags for use in connection with weight and nutritional products or with skin and personal care products'.

2.2.5   Herbalife will not use or apply to register the Herbalife Tri-Leaf Mark without a circle around it.

2.2.6   Herbalife will not use or apply to register any design including stripes or any other mark or design on sports apparel which may suggest to consumers that there is a link or connection between Herbalife's products and adidas.

2.2.7   Herbalife will not use any adidas products or images of adidas products in any advertising or promotion for any of its products without the prior written approval of adidas.

3.    <u>Confidentiality.</u> The Parties will keep this Agreement strictly confidential, and will not disclose its existence or terms to anyone, except professional advisors or as required in any tax filing or to comply with legal process or a court order.  Neither the Parties nor their counsel shall seek to publicize, or comment to the press concerning, this Agreement.  Notwithstanding the foregoing, the Parties agree that this Agreement may be disclosed to any third party (or its attorneys) in connection with the enforcement against such third party of rights in the Trefoil Mark or the Herbalife Tri-leaf Mark in

Exhibit 8
Page 10 of 15

any country of the world.  The Parties further agree that this Agreement may be disclosed in the context of litigation, provided that the disclosing Party exercises reasonable efforts to ensure that any such disclosure is made in a manner that will limit public disclosure (e.g., pursuant to a protective order).

4.   <u>Warranties and Representations.</u>  The Parties acknowledge that no person or any other entity has made any promise, representation, or warranty whatsoever, expressed, implied or statutory, not contained herein, concerning the subject matter hereof, to induce the execution of this instrument, and the Parties acknowledge that they have executed this instrument without reliance on any promise, representation, or warranty not contained herein.  The Parties have read and understand all terms and conditions of this Agreement.

5.   <u>Force and Effect of Agreement.</u>  This Agreement shall be binding upon and inure to the benefit of the Parties and each of their respective directors, officers, agents, employees, stockholders, representatives, attorneys, successors and assigns.

6.   <u>Severability.</u> The invalidity or unenforceability of any paragraph or provision of this Agreement shall not affect the validity or enforceability of the remainder of this Agreement, or the remainder of any paragraph or provision.  This Agreement shall be construed in all respects as if any invalid or unenforceable paragraph or provision were omitted.  Without limiting the generality of the foregoing, if any court, agency, tribunal, or other authority in one country declares this Agreement or any part of it to be invalid or unenforceable, that act shall have no effect on the validity and enforceability of this Agreement in any other country.

7.   <u>Governing Law.</u>  This Agreement shall be governed by and construed in accordance with English law . All disputes arising out of this Agreement, if not otherwise resolved, shall exclusively be submitted to the High Court in London.

8.   <u>Waiver.</u> The waiver of any breach of any term of this Agreement by any Party shall not be deemed a waiver of any subsequent or prior breach.  No Party shall be deemed to have waived any breach of any term of this Agreement, except as set forth in writing.

9.   <u>Execution of Agreement.</u> The undersigned individuals hereby warrant and represent that they have full authority to execute and perform this Agreement on behalf of the party for which they have signed.  This Agreement may be executed in counterparts, all of which, when taken together, shall constitute one agreement with the same force and effect as if all signatures had been entered on one document.

10.  <u>Entire Agreement and Modification.</u> This Agreement represents the entire agreement between the Parties and supersedes all prior or contemporaneous agreements (including the 1998 Agreement).  This Agreement may not be altered, amended or modified, except in a writing signed by all Parties.

Exhibit 8
Page 11 of 15

Dated: _____, 2009                    **ADIDAS AG**


                                           By: _____
                                           Name: Tim Behean
                                           Title: General Counsel, Group Intellectual
Property



Dated: _____, 2009                    **HERBALIFE INTERNATIONAL INC**


                                           By: _____
                                           Name:
                                           Title:

Exhibit 8
Page 12 of 15

**EXHIBIT 1: The adidas Trefoil logo**



Exhibit 8
Page 13 of 15

**EXHIBIT 2: The Herbalife Tri-leaf Mark**

Exhibit 8
Page 14 of 15

**EXHIBIT 3: Opposition procedures**

Exhibit 8
Page 15 of 15