IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ADIDAS AMERICA, INC.** and
**ADIDAS AG**,

Plaintiffs,

v.

**HERBALIFE INTERNATIONAL, INC.**,

Defendant.

No. CV 09-661-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before the Court on Plaintiffs' Motion to Enjoin Defendant Herbalife International, Inc. from Pursuing Duplicative Litigation (#5) and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, Transfer to the Central District of California (#12). Plaintiffs adidas America, Inc. and adidas AG (collectively, "Adidas") argue that the District of Oregon is the proper forum for their trademark infringement and breach of contract claims and should remain the only forum for the litigation under the "first-to-file" rule. (Pl.'s Mem. in Supp. of Mot. to Enjoin (#25) 1.) Defendant Herbalife International ("Herbalife") counters that the District of Oregon lacks personal jurisdiction and is an improper venue for the action. In the event the Court finds jurisdiction and venue are proper in Oregon, Herbalife argues that the case should be transferred to California. (*See* Def. Mem. (#13).)

## BACKGROUND

In 1998, adidas AG and Herbalife[1] entered into a settlement agreement ("the 1998 Agreement") regarding the use of Herbalife's symbol, the "Tri-Leaf Mark," which Adidas contends infringes upon its trademarked symbol, the "Trefoil Mark." (*See* Compl. (#1), Ex. 7.) Adidas alleges that Herbalife violated the terms of agreement by applying its Tri-Leaf Mark to a wide variety of sportswear. (*Id.* at 2-3.) The dispute centers around the design of the 2011 jerseys to be worn by the L.A. Galaxy, a professional soccer team. (*Id.* at 10.) Both Adidas and Herbalife have business relationships with the L.A. Galaxy, and the trademarks of both companies are featured on the L.A. Galaxy jerseys. (*Id.* at 10-11.) adidas America designs and develops the L.A. Galaxy jerseys in Oregon. (Feldman Decl. (#64) Ex. 2, ¶ 18.) Under its agreement with Major League Soccer, Adidas is not required to manufacture jerseys containing infringing trademarks. (McGuire Decl. (#63) 2.) Because it has not been decided if the Herbalife mark is infringing, Adidas has prepared two potential 2011 L.A. Galaxy jersey designs. (*Id.* at 3.) One design includes Herbalife's name and mark, and the other includes only Herbalife's name. (*Id.*) A final decision on the jersey design must be made by April 1, 2010. (*Id.*)

Adidas insists that it negotiated with Herbalife for several months in an effort to avoid filing this lawsuit. (Marti Decl. (#7) ¶¶ 4-7). When the negotiations failed, Adidas filed this action on June 12, 2009. (*Id.* ¶ 7.) The complaint states, in relevant part, claims for breach of contract, deceptive trade practices, trademark infringement, unfair competition, and trademark

---

[1] Although adidas AG and Herbalife are the only parties named in the agreement, the agreement was executed on behalf of each party's "affiliates and subsidiaries." (Compl. (#1), Ex. 7.)

dilution. (Compl. (#1) 12-18.)

Five days later, on June 17, 2009, Herbalife filed an action in the Central District of California seeking declaratory judgments that it did not breach the agreement and did not infringe on Adidas's trademark. (Pl.'s Mem. in Supp. of Mot. to Enjoin (#6) 3.) Herbalife also alleged a claim for tortious interference with a contractual relationship. (*Id.*) The California court stayed its action pending resolution of the motions before this Court. (Feldman Decl. (#64) Ex. 1.)

For purposes of analyzing jurisdiction and venue, certain details about the parties are particularly relevant. adidas AG is a German company that transacts business in the United States primarily through its wholly-owned subsidiary, adidas America. (*See* Compl. (#1) 3-4.) adidas America is incorporated in Delaware with its principal place of business in Portland, Oregon. (*Id.* at 4) The Portland office is the base for Adidas's United States sales, marketing, distribution, and licensing operations. (Pl's. Response (#55) 30.) Herbalife is incorporated in Nevada with its principal place of business in Los Angeles, California. (*See* Compl. (#1) 3-4.)

**DISCUSSION**

Herbalife does not dispute either that Adidas was the first to file, or that the actions involve the same parties and issues. Rather, Herbalife argues the Court should not apply the first-to-file rule to this case because (1) Adidas filed an "anticipatory suit" and engaged in forum shopping; (2) this Court lacks personal jurisdiction over Herbalife; and (3) this Court is an improper venue. Herbalife also asserts that a balance of conveniences favors transferring this case to the Central District of California.

## I. First-to-File Rule

The "first-to-file" rule applies to duplicative lawsuits that involve "the same parties and issues" but are filed in different federal districts. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). In these cases, the proper forum is the first court that properly assumes jurisdiction over the action. *See id.* at 623. "When a district court has jurisdiction over all parties involved, it may enjoin later filed actions." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

A court may depart from the first-to-file rule if it finds that the plaintiff filed an "anticipatory suit" to engage in forum shopping. The anticipatory suit exception is grounded in equitable principles and has a very specific meaning in this context. The exception does not apply simply because a party anticipates litigation and sues first to obtain its choice of forum. Rather, the exception applies when a would-be plaintiff is "deprived of its traditional choice of forum" because the other party lacked a "preexisting motive for going to court" and filed suit based on "specific, concrete indications that a suit . . . was imminent." *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097-98 (N.D. Cal. 2006). The anticipatory suit exception is most often at issue when a plaintiff sues for declaratory relief. *See id.*

I do not find the anticipatory suit exception applicable here. Adidas had a preexisting motive for filing suit based on its perceived breach of contract and trademark infringement claim. Herbalife has not presented evidence that Adidas filed suit in response to a specific, concrete indication that a Herbalife lawsuit was imminent. Rather, the unrebutted evidence before the Court shows that Adidas filed suit because Adidas perceived that negotiations between the

parties had broken down. On June 5, 2009, only days before Adidas filed suit, Herbalife rejected Adidas's April 24, 2009 settlement offer and took an unequivocal position that Herbalife was not in breach of the 1998 Agreement. (Carson Decl. (#14) Ex. 2.) Unlike a typical anticipatory suit in which only declaratory relief is sought, Adidas's suit alleges breach of contract and trademark infringement and seeks monetary relief in addition to injunctive relief. Furthermore, Herbalife's forum shopping allegations carry little weight in light of the fact that adidas AG's United States headquarters are located in the District of Oregon, making this court Adidas's natural choice of forum. A plaintiff does not engage in forum shopping simply by choosing to file suit in the most convenient forum available to it.

## II. **Personal Jurisdiction**

Herbalife disputes this Court's jurisdiction, arguing that Herbalife has no registered agent, bank accounts, real property, personal property, offices, or employees in Oregon. (Def.'s Mem. (#13) 3-5.) Herbalife further asserts that none of the events and circumstances surrounding the 1998 Agreement occurred in Oregon and that none of Herbalife's behavior has been purposefully directed at the state. (*Id.* at 6-7.)

The District of Oregon has personal jurisdiction over a defendant when the state of Oregon would be able to exercise personal jurisdiction over that defendant. *See* Fed. R. Civ. P. 4(k). Under Oregon's long-arm statute, an Oregon court may exercise jurisdiction over a nonresident defendant so long as doing so would not violate due process. *See* ORCP 4. Due process is met when:

> (1) The nonresident defendant [performed] some act or consummate[d] some transaction with the forum or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby

invoking the benefits and protections of its laws.

(2) The claim . . . arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction [is] reasonable.

*Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). Courts have upheld the exercise of personal jurisdiction over a nonresident defendant when the defendant reaches into the forum state to negotiate a contract, and the claim arises out of the contract. *See Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985).

Based on the following analysis, I find that Herbalife has purposefully availed itself of the privilege of conducting business in Oregon, that the claims at issue arise out of Herbalife's activities in Oregon, and that exercising personal jurisdiction over Herbalife would not be unreasonable.

**A. *Purposeful Availment***

Here, the exercise of jurisdiction over Herbalife is proper because Herbalife negotiated the 1998 Agreement with Adidas in Oregon, and Adidas has now sued Herbalife in Oregon for breach of that agreement. Although the existence of a contract, on its own, is not sufficient to show purposeful availment, the court may find personal jurisdiction by looking to factors such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and any contemplated future consequences of the agreement. *Burger King*, 471 U.S. at 479. Here, contrary to Herbalife's assertion that "all conduct and events relating to the contract at issue took place in Europe and California," (Def.'s Mem. (#13) 11), evidence shows that the 1998 Agreement was negotiated primarily between Adidas in Oregon and Herbalife in California.

Adidas has presented unrefuted evidence that Herbalife sent correspondence to Adidas in Oregon at least nine separate times in the process of negotiating the agreement. (Backman Decl. (#27) ¶ 16.)[2] In contrast, Herbalife has presented no evidence of negotiations with Adidas in Germany. By sending negotiation correspondence to Adidas in Oregon, Herbalife reached into Oregon and conducted business with an Oregon company.

Furthermore, Herbalife has continued its course of dealing with Adidas in Oregon since the 1998 Agreement was signed. Adidas provided evidence that Herbalife communicated with adidas America's in-house counsel, located in Oregon, when Herbalife needed assistance with releasing Herbalife products from customs authorities. (Marti Decl. (#56) Ex. 21.) Adidas stated that it assisted Herbalife in those releases under its obligations in the 1998 Agreement. (*Id.* at ¶ 23.) In late 2007 Adidas assisted Herbalife in the release of jerseys from customs authorities, making jerseys specifically related to the 1998 Agreement negotiated with Adidas in Oregon. (*Id.*

---

[2] Herbalife moved to strike portions of Vanessa L. Backman's declaration (#27), which describes Herbalife's correspondence with adidas America, on the grounds that Ms. Backman relied upon unauthenticated hearsay documents and lacks personal knowledge of the settlement negotiations. (Def.'s Mem. in Supp. of Mot. to Strike (#37).) Although counsel for Herbalife certified that it conferred with Adidas's counsel prior to filing the motion, counsel for Adidas submitted unrefuted evidence that Herbalife failed to do so. (Marti Decl. (#43) ¶¶ 4-5 & Exs. 2 (email from Herbalife's counsel to Adidas's counsel acknowledging that Herbalife "mistakenly believed that a telephone call had taken place when apparently it did not.") Based on Adidas's evidence, I find that Herbalife failed to meet and confer, as required by Local Rule 7-1.

Substantively, I find that Herbalife's arguments in favor of striking portions of Ms. Backman's testimony are without merit. First, although Ms. Backman lacks personal knowledge of the settlement negotiations, the subject of those negotiations are not at issue. The issue is whether Herbalife corresponded with an Oregon company located in Oregon, and Ms. Backman has personal knowledge of that correspondence based on her review of Adidas's files. Second, the letters are not offered for the truth of the matter asserted and therefore are not hearsay. Third, Ms. Backman found the letters in the files where Adidas keeps its correspondence with Herbalife. Absent any evidence that these documents are not Herbalife's correspondence with Adidas, there is no genuine question as to their authenticity. I therefore DENY Herbalife's Motion to Strike Portions of Declaration of Vanessa L. Backman (#36).

at Ex. 2.)

Independent of the continued communications regarding customs seizures, the 1998 Agreement itself contemplates future communications between Herbalife and Adidas. (*See* Comp. (#1) Ex. 7.) Under the Agreement, Adidas agrees to execute letters of consent when requested by Herbalife if an Adidas mark is cited as a bar to Herbalife registering a mark, and vice versa. (*Id.* at ¶¶ 2, 4.) Further, Herbalife and Adidas agree that if there is confusion between the marks (presumably sometime in the future) the two companies will work together to come to a solution. (*Id.* at ¶ 7.) These future commitments in the Agreement itself evidence dealings beyond the signing of the Agreement. I find that Herbalife's continued communications with Adidas in Oregon, which relate to the 1998 Agreement, refute Herbalife's assertions that there has been no course of dealings between the parties since the agreement was signed.

Although Herbalife asserts that public policy counsels against asserting jurisdiction based on settlement negotiations (Def.'s Am. Reply (#71) 17-18), the case law cited by Herbalife is not analogous to this case in light of Herbalife's long-term relationship with Adidas. In the cases cited by Herbalife, the parties communicated for less than a year before litigation was filed, and no settlement agreement was ever reached. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.* 148 F.3d 1355 (Fed. Cir. 1998) Here, in the decade that has passed between the signing of the 1998 Agreement and the current litigation, there have been several communications between Herbalife and Adidas related to the 1998 Agreement. (*See* Marti Decl. (#56) Ex. 21.) I find it material that Herbalife's and Adidas's communications culminated in a settlement agreement, and that the agreement contemplates further cooperation between the parties rather than an end to their relationship. Based on Herbalife's communications with Adidas

in Oregon before the 1998 Agreement and the course of dealings between the parties since 1998, I find that Herbalife has purposefully availed itself of the privilege of conducting activities in Oregon.

**B. *Claim Arising Out of Defendant's Contacts with Oregon***

As discussed above, Herbalife's contacts with Oregon are related to the 1998 Agreement that is the subject of this action.

**C. *Reasonableness***

The exercise of specific personal jurisdiction in Oregon is reasonable. In determining reasonableness, a court must balance (1) the extent to which the defendant has purposefully interjected itself into the forum, (2) the burden caused by defending the claim in the forum, (3) any conflicts with the sovereignty of the defendant's home state, (4) the forum state's interest in the dispute, (5) the most efficient resolution of the claim, (6) the importance of the forum to the plaintiff, and (7) the existence of an alternative forum. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

Herbalife initially asserted that jurisdiction in Oregon would be unreasonable because this action lacks a legitimate connection to Oregon.[3] Although the 1998 Agreement itself states that it is binding on subsidiaries and affiliates, Herbalife contended that only adidas AG, the signatory party, could sue for breach of the 1998 Agreement. (Comp. (#1) Ex. 7; Mem. in Supp. of Mot. to Dismiss (#13) 7.) Herbalife further argued that adidas America was improperly added as plaintiff

---

[3] In its briefing, Adidas also described Herbalife's other contacts with Oregon, including its entering into contracts with Oregon residents, sending promotional materials into the state, paying commissions to independent distributors in the state, charging shipping fees to Oregon residents, and selling products into the state. (Pls.' Response (#55) 11.)

"in an attempt to assert false jurisdiction and venue in Oregon." (*Id.*) The argument that adidas America is an improper party appears to have been withdrawn when Herbalife "recently became aware" that adidas America manufactures the L.A. Galaxy jerseys in Oregon and then sued adidas America in the Central District of California on a claim arising out of the same operative facts at issue here. (*See* Feldman Decl. (#64) Ex. 2 & 3.)

Contrary to Herbalife's assertion that it could not reasonably foresee litigation in Oregon when it signed a contract with a German corporation, the record shows that Herbalife not only knew of Adidas's presence in Oregon but considered Adidas to be "located in Oregon." (*See* Backman Decl. (#27) ¶ 19, Ex. 2.) Herbalife's Director of Legal Affairs deleted an Oregon choice-of-law provision in a draft of the 1998 Agreement, stating that "Herbalife is located in California and Adidas is located in Oregon. As such, any issues involving whose law would govern in a lawsuit would be resolved in court." (*Id.*) Based on Herbalife's negotiations with Adidas in Oregon prior to signing the agreement and Herbalife's awareness of Adidas' presence in Oregon, it was reasonably foreseeable that Herbalife could be required to defend itself in Oregon if a suit arose out of the 1998 Agreement.

There will be a burden on Herbalife if it is required to litigate in Oregon, but that burden is not so great as to deprive Herbalife of due process. I find no conflict with the sovereignty of California, and Oregon has an interest in adjudicating claims brought by Oregon residents. Adidas also has a strong interest in litigating this case in Oregon. The L.A. Galaxy jerseys at issue in this case are designed in Oregon (*See* Backman Decl. (#27) ¶ 12.), and the harm from

Herbalife's alleged infringement is felt in Oregon.[4] Finally, while the California action has been stayed due to the jurisdictional issues and unable to progress, this court has become familiar with the issues presented in this case. (*See* Feldman Decl. (#64) Ex. 1.) The issues raised by Adidas's complaint are susceptible to efficient resolution here, a factor I find especially persuasive given the April 1, 2010 deadline for the L.A. Galaxy jersey design. After considering all factors, I find that Oregon is not an unreasonable forum.

Accordingly, the exercise of personal jurisdiction does not offend due process because Herbalife has purposefully availed itself of Oregon, this action arises out of Herbalife's contacts with Oregon, and the exercise of jurisdiction over Herbalife is reasonable.

## III. Venue

Under 28 U.S.C. § 1391(b)(1), venue is proper in a judicial district where any defendant resides. A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Having found that this Court may exercise personal jurisdiction over Herbalife because of the circumstances surrounding the 1998 Agreement, I find that venue is necessarily proper under 28 U.S.C. § 1391(c).

---

[4] Herbalife asserts that any harm resulting from trademark infringement could only be directed at adidas AG, the owner of the trademark. (Def.'s Mem. (#13) 10-11.) But while Adidas AG suffers injury in Germany, adidas America's interests can be injured by infringement as well. (Pl's. Response (#55) 30.) adidas America's business operations are centered around selling products that bear Adidas AG's registered mark. Under this business model, adidas America's interests are inextricably tied to the allegedly infringed mark. If the Adidas AG mark is harmed due to infringement, adidas America is also injured as its profitability is dependent upon the mark. That injury is felt in Oregon because adidas America has its principal place of business in Portland. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) (noting that a corporation can feel harm where it has its principal place of business).

**IV. <u>Change of Venue</u>**

A court may transfer an action to another venue "[f]or the convenience of parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). This rule merges with the first-to-file rule, which dictates that the first court should maintain jurisdiction unless a party shows that a "balance of convenience" favors the later-filed action. *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir. 1965). The later-filed party bears the burden of showing that the balance of convenience favors transfer, and "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843. In balancing a plaintiff's choice of forum against the defendant's burden of litigating in an inconvenient forum, a court should consider factors such as the place where the agreement was negotiated, the parties' contacts with the forum, and the ease of access to witnesses and other sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

I find that Herbalife has failed to meet its burden to show that the inconvenience of litigating in Oregon warrants transferring this litigation to California. Whether this case is litigated in California or Oregon, the location will be more convenient for one of the parties and less convenient for the other. California and Oregon are contiguous states, so neither forum will be substantially inconvenient for either party. The 1998 agreement, a focal point for this litigation, was negotiated through correspondence between Herbalife in California and Adidas in Oregon. Although Herbalife's relevant documents and evidence of its negotiations with the L.A. Galaxy may be found in California, Adidas's documents regarding the jersey manufacturing and design are located in Oregon. Similarly, whether the case is litigated in Oregon or California, one party will derive greater benefits from the court's power to compel witnesses than the other. Any

Herbalife witnesses beyond the subpoena power of this court can still be deposed in California. As it currently stands, Herbalife has only identified one witness who is unwilling to travel to Oregon.

With respect to Adidas's burden, Herbalife asserts that all of Adidas's witnesses are located in Germany, and therefore Adidas's burden is the same whether its witnesses travel to California or Oregon. (Def. Mem. (#13) 12.) But there is no evidence to suggest that Adidas has any witnesses in Germany. Rather, Adidas states that all of its relevant witnesses are located in Oregon. (Backman Decl. (#27) ¶ 14.) Where the balance of factors is relatively even, as it is here, the law favors deference toward the plaintiff's choice of forum. (*See Dole*, 303 F.3d at 1117.) Adidas has chosen to litigate its claims in the District of Oregon, and Herbalife has not presented a showing of inconvenience sufficient to overcome that choice.

**CONCLUSION**

For the foregoing reasons, I GRANT Plaintiff's Motion to Enjoin Defendant Herbalife International, Inc. from Pursuing Duplicative Litigation (#5) and DENY Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Transfer to Central District of California (#12). I also DENY Defendant's Motion to Strike Portions of Vanessa Backman's Declaration (#36).

IT IS SO ORDERED.

DATED this 12th day of February, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court