**Kenneth R. Davis II**, OSB No. 971132
davisk@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**M. John Carson**, *Admitted Pro Hac Vice*
jcarson@foley.com
**Leila Nourani**, *Admitted Pro Hac Vice*
lnourani@foley.com
**Michael J. Song**, *Admitted Pro Hac Vice*
msong@foley.com
**FOLEY & LARDNER LLP**
555 S Flower Street, 35th Floor
Los Angeles, CA  90071
Telephone:  213.972.4500
Facsimile:  213.486.0065

Attorneys for Defendant Herbalife International, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.** and **ADIDAS AG,**<br><br>                                          Plaintiffs,<br><br>          v.<br><br>**HERBALIFE INTERNATIONAL, INC.,**<br><br>                                          Defendant. | CV No. 09-661-MO<br><br>Defendant Herbalife International, Inc.'s<br>**ANSWER, AFFIRMATIVE DEFENSES**<br>**AND AMENDED COUNTERCLAIMS** |

PAGE 1 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
           COUNTERCLAIMS

Defendant Herbalife International, Inc. ("Herbalife") answers and responds to plaintiffs adidas America, Inc. ("adidas America") and adidas AG's (collectively, "plaintiffs" or "adidas") Complaint as follows:

## ANSWER

1.    Herbalife denies the allegations contained in paragraph 1 of the complaint.

2.    Herbalife lacks sufficient information to form a belief as to the truth of the allegations contained in paragraph 2 of the complaint and, therefore, denies those allegations.

3.    Herbalife admits that it is using and seeks to register its Tri-Leaf Mark, which mark is depicted in paragraph 3 of the complaint.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 3 of the complaint.

4.    Herbalife denies the allegations contained in paragraphs 4, 5, 6, and 7 of the complaint.

5.    Herbalife lacks sufficient information to form a belief as to the truth of the allegations contained in paragraphs 8 and 9 of the complaint and, therefore, denies those allegations.

6.    Herbalife admits the allegations contained in paragraph 10 of the complaint.

7.    Herbalife lacks sufficient information to form a belief as to the truth of the allegations contained in paragraphs 11 through 16 of the complaint and, therefore, denies those allegations.

8.    In answer to paragraph 17, Herbalife denies that adidas is a world-famous brand. Herbalife lacks sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 17 of the complaint and, therefore, denies those allegations.

9.    Herbalife denies the allegations contained in paragraph 18 of the complaint.

10.    Herbalife lacks sufficient information to form a belief as to the truth of the allegations contained in paragraphs 19 through 21 of the complaint and, therefore, denies those allegations.

PAGE 2 -    DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
             COUNTERCLAIMS

11.     In answer to paragraph 22, Herbalife admits that it has used its Tri-Leaf Mark, which mark is depicted in paragraph 22 of the complaint, in connection with nutritional supplements and other health-related products.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 22 of the complaint.

12.     In answer to paragraph 23, Herbalife admits that it has sought to register its Tri-Leaf Mark in a number of jurisdictions around the world and that plaintiffs have commenced trademark opposition proceedings against some of those applications.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 23 of the complaint.

13.     In answer to paragraph 24, Herbalife admits that Herbalife and adidas AG entered into a contract on July 10, 1998.  Herbalife also admits that paragraphs 5, 6, and 7 of the contract are cited in paragraph 24 of the complaint and that the contract is attached as Exhibit 7 to the complaint.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 24 of the complaint.

14.     Herbalife denies the allegations contained in paragraph 25 of the complaint.

15.     In answer to paragraph 26, Herbalife admits that it registered the domain name <herbalifesports.com>.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 26 of the complaint.

16.     Herbalife denies the allegations contained in paragraphs 27, 28, and 29 of the complaint.

17.     In answer to paragraph 30, Herbalife admits that Herbalife and adidas sponsor some of the same sporting events and/or teams.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 30 of the complaint.

18.     Herbalife denies the allegations contained in paragraphs 31 through 36 of the complaint.

19.     Herbalife admits the allegations contained in paragraphs 37 and 38 of the complaint.

PAGE 3 -    DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
                    COUNTERCLAIMS

20.     Herbalife denies the allegations contained in paragraph 39 of the complaint.

21.     In answer to paragraph 40, Herbalife admits that plaintiff has made demands on Herbalife and that such demands have not resulted in resolution of this matter.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 40 of the complaint.

22.     In answer to paragraph 41, Herbalife admits that it received a letter from plaintiffs dated April 24, 2009, a copy of which is attached to the complaint as Exhibit 8.  Except as expressly admitted, Herbalife denies the remaining allegations contained in paragraph 41 of the complaint.

23.     Herbalife denies the allegations contained in paragraph 42 of the complaint.

24.     In answer to paragraph 43, Herbalife incorporates by reference the answers to paragraphs 1 through 42, set forth herein.

25.     Herbalife denies the allegations set forth in paragraphs 44 through 50 of the complaint.

26.     In answer to paragraph 51, Herbalife incorporates by reference the answers to paragraphs 1 through 50, set forth herein.

27.     Herbalife denies the allegations set forth in paragraphs 52 through 55 of the complaint.

28.     In answer to paragraph 56, Herbalife incorporates by reference the answers to paragraphs 1 through 55, set forth herein.

29.     Herbalife denies the allegations set forth in paragraphs 57 through 60 of the complaint.

30.     In answer to paragraph 61, Herbalife incorporates by reference the answers to paragraphs 1 through 60, set forth herein.

31.     Herbalife denies the allegations set forth in paragraphs 62 through 65 of the complaint.

PAGE 4 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
           COUNTERCLAIMS

32.    In answer to paragraph 66, Herbalife incorporates by reference the answers to paragraphs 1 through 65, set forth herein.

33.    Herbalife denies the allegations set forth in paragraphs 67 through 70 of the complaint.

34.    In answer to paragraph 71, Herbalife incorporates by reference the answers to paragraphs 1 through 70, set forth herein.

35.    Herbalife denies the allegations set forth in paragraphs 72 and 73 of the complaint.

36.    In answer to paragraph 74, Herbalife incorporates by reference the answers to paragraphs 1 through 73, set forth herein.

37.    Herbalife denies the allegations set forth in paragraphs 75 through 78 of the complaint.

38.    Herbalife denies all of the allegations set forth in paragraphs 1 through 10 of plaintiffs' prayer for relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

39.    Plaintiffs' complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

40.    Plaintiffs' claims are barred because of their attempted misuse of their trademarks to acquire a monopoly and/or broad commercial advantage beyond the scope of their trademark rights.

### THIRD AFFIRMATIVE DEFENSE

41.    Plaintiffs' claims are barred because their attempted misuse of their trademarks constitutes an improper means and/or purpose.

PAGE 5 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
           COUNTERCLAIMS

## FOURTH AFFIRMATIVE DEFENSE

42.    Plaintiffs have unclean hands and are thereby barred from obtaining the relief they seek.

## FIFTH AFFIRMATIVE DEFENSE

43.    Herbalife's alleged infringing activities constitute protected fair use.

## SIXTH AFFIRMATIVE DEFENSE

44.    Plaintiffs' claims are barred by laches, estoppel, and/or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

45.    Plaintiffs have released some or all of their claims through the parties' prior agreement.

## EIGHTH AFFIRMATIVE DEFENSE

46.    Plaintiffs' claims, in whole or in part, are barred by the applicable statutes of limitations.

## AMENDED COUNTERCLAIMS

Herbalife asserts the following counterclaims against plaintiffs and alleges as follows:

## GENERAL ALLEGATIONS

1.    Herbalife is a Nevada corporation, having its principal place of business at 1800 Century Park East, Los Angeles, California, 90067.

2.    On information and belief, adidas America is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon, 97217.  adidas America is wholly-owned by its parent company, adidas AG and its affiliates.

3.    On information and belief, adidas AG is an alien corporation based in Germany. adidas is authorized to conduct business throughout the United States and has significant business representatives throughout the United States and in general.

PAGE 6 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
            COUNTERCLAIMS

4.      Herbalife manufactures and sells weight, nutritional, skin, and personal care products under its distinctive Tri-Leaf Design trademark ("TRILEAF Mark").

5.      adidas America, Inc. and adidas AG are collectively referred to herein as "plaintiffs" or "adidas."

6.      adidas manufactures and sells a variety of goods including clothing, footwear, accessories, and equipment under its Trefoil Design trademark ("TREFOIL Mark").

7.      Herbalife and adidas registered their marks in numerous jurisdictions throughout the world including with the U.S. Patent and Trademark Office.  Prior to the Settlement Agreement described herein, adidas had opposed Herbalife's trademark applications in a number of jurisdictions.  To resolve adidas' oppositions and to allow simultaneous use and registration of their respective marks throughout the world, Herbalife and adidas AG entered into a Settlement Agreement on July 10, 1998.

## FIRST COUNTERCLAIM

### (Declaratory Judgment for Non-Breach of the Settlement Agreement)

8.      Herbalife realleges and incorporates by reference paragraphs 1 through 7 of its counterclaims above.

9.      This is a counterclaim for declaratory judgment that Herbalife has not breached the terms of the Settlement Agreement entered into between Herbalife and defendant adidas AG on July 10, 1998.

10.      The Settlement Agreement dated July 10, 1998, was signed by adidas on July 10, 1998, and accepted by Herbalife in California on July 17, 1998.

11.      Paragraph 1 of the Settlement Agreement provides that adidas will not object to Herbalife's TRILEAF Marks which were already registered anywhere in the world at the time of the date of the Settlement Agreement.  At that time, Herbalife had registered and was using its TRILEAF Mark on tote bags, t-shirts, polo shirts, jackets, and other sports-related apparel.

PAGE 7 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
           COUNTERCLAIMS

Pursuant to Paragraph 1, adidas agreed not to object to the then-existing use of the TRILEAF Mark.

    12.     Paragraph 2 of the Settlement Agreement provides that adidas will not pursue any action with respect to the use or registration of the TRILEAF Mark in connection with the name Herbalife.

    13.     Paragraph 5 of the Settlement Agreement provides that Herbalife will not "use and register" its TRILEAF Mark on footwear, sports apparel, sports accessories, or equipment.

    14.     Paragraph 6 of the Settlement Agreement provides that Herbalife will use its TRILEAF Mark in combination or in close proximity with the word "Herbalife."

    15.     Paragraph 7 of the Settlement Agreement provides that Herbalife and adidas agree to avoid any activity that would lead to confusion between their respective marks.

    16.     Pursuant to the Settlement Agreement, adidas agreed not to pursue any action against any uses of the TRILEAF Mark as long as the TRILEAF Mark appears in tandem with the word "Herbalife" regardless of the type of product on which the mark and name appear, *i.e.,* the TRILEAF Mark can be used on any item, including sports apparel, as long as the TRILEAF Mark and "Herbalife" appear in tandem.

    17.     Further, pursuant to the Settlement Agreement, as long as the Herbalife TRILEAF Mark is used in conjunction with the Herbalife name, and Herbalife has not both used *and* registered its TRILEAF Mark on the goods listed, no breach has occurred.

    18.     Herbalife has abided by the Settlement Agreement.

    19.     On September 29, 2006, adidas contacted Herbalife and asserted that Herbalife was in breach of the Settlement Agreement. Later, adidas asserted that Herbalife was infringing adidas' TREFOIL Mark by displaying the TRILEAF Mark on casual wear that adidas couched as sports wear and by displaying the TRILEAF Mark on sport jerseys including on the jerseys of the Los Angeles Galaxy ("Galaxy") Major League Soccer ("MLS") team.

PAGE 8 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
            COUNTERCLAIMS

20.     Herbalife's use of the TRILEAF Mark with the Herbalife name on sports apparel, however, does not violate the Settlement Agreement.    Herbalife's TRILEAF Mark is accompanied by the word "Herbalife" on the apparel at issue.    Herbalife's use of the TRILEAF Mark together with the Herbalife name on sports apparel is permissible under the Settlement Agreement.

21.     An actual controversy has arisen and now exists between Herbalife and adidas in that adidas now alleges that Herbalife has acted in violation of the Settlement Agreement, whereas Herbalife disputes this contention.    Additionally, adidas has filed a complaint alleging trademark infringement, unfair competition, trademark dilutions, deceptive trade practices, and breach of contract.    Consequently, a judicial determination of such controversy is necessary and appropriate at this time.    Accordingly, Herbalife seeks judgment of this Court declaring that it has not breached and is not in breach of the Settlement Agreement.

## SECOND COUNTERCLAIM

### (Intentional Interference with Contractual Relations, Business Relations, or Prospective Economic Advantage)

22.     Herbalife realleges and incorporates by reference paragraphs 1 through 21 of its counterclaims above.

23.     adidas has intentionally interfered with contractual relations, business relations, and prospective economic advantage based on the actions of adidas with regard to Herbalife's agreement and relationship with third-party Anschutz L.A. Soccer, Inc., the owner of the Galaxy MLS team.

24.     Third-party Anschutz Entertainment Group ("AEG") is one of the largest owners of professional sports teams and stadiums in the world and owns and operates the Galaxy in its capacity as an agent for MLS.

25.     Herbalife and AEG have a current and ongoing business relationship.

PAGE 9 -   DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
           COUNTERCLAIMS

26.     Effective as of March 14, 2007, Herbalife and AEG, via Anschutz L.A. Soccer, Inc., entered into a contract (the "2007 Sponsor Agreement") for Herbalife's sponsorship of the Galaxy MLS team.

27.     The 2007 Sponsor Agreement included provisions for the Galaxy to use the Herbalife TRILEAF Mark and the Herbalife name through December 31, 2011, to acknowledge Herbalife's status as an official sponsor of the team.

28.     The Herbalife TRILEAF Mark and the Herbalife name have appeared in a prominent position on the front of all Galaxy jerseys since March 2007.

29.     The 2007 Sponsor Agreement confers to Herbalife the right to approve the appearance of its name and TRILEAF Mark on Galaxy apparel.

30.     Under the 2007 Sponsor Agreement, Herbalife's name and TRILEAF Mark are to be prominently placed.  adidas is the official manufacturer of all MLS apparel, including Galaxy jerseys, and any rights adidas may have to placement of its name and logo are secondary to Herbalife's rights.

31.     adidas is, and has at all relevant times been, aware of the 2007 Sponsor Agreement and of the general business relationship between Herbalife and AEG.

32.     adidas is now objecting to the use of the Herbalife TRILEAF Mark and unilaterally seeks its removal from the Galaxy MLS team jerseys and other goods.

33.     In June 2009, Herbalife requested from AEG to review the artwork for the 2011 Galaxy jersey.  To date, Herbalife has not received the requested artwork.

34.     On December 3, 2009, Herbalife received photographs (not the artwork) of adidas' re-design for the 2011 Galaxy jerseys, which did ***not*** include the Herbalife TRILEAF Mark.  That very same day, Herbalife informed AEG that it did ***not*** approve of the re-design as is required under the 2007 Sponsor Agreement.

PAGE 10 -  DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
             COUNTERCLAIMS

35.     On January 12, 2010, AEG informed Herbalife that adidas had refused to produce the 2011 Galaxy jerseys with the Herbalife TRILEAF Mark and that the deadline for the final creative artwork was January 20, 2010.

36.     On January 15, 2010, Herbalife received written confirmation from AEG of adidas' refusal and of the January 20, 2010, deadline for the artwork.

37.     Herbalife has repeatedly informed AEG that it does not approve of any design of Galaxy jerseys that does not include Herbalife's TRILEAF Mark.

38.     On January 19, 2010, Herbalife provided AEG with formal, written notice of its disapproval.

39.     On January 20, 2010, Herbalife first learned that adidas had also refused to release the design materials for the 2011 Galaxy jerseys even to AEG.  Thus, on January 20, 2010, Herbalife first learned that adidas was acting independently of AEG, and that adidas' actions prevented AEG from providing the artwork to Herbalife.

40.     On January 28, 2010, Herbalife learned, through the declaration of Chris McGuire filed in this action, that final decision by adidas on the design to be used for the 2011 Galaxy jerseys would not be made until April 1, 2010.  To date, however, adidas continues to refuse to produce the 2011 Galaxy jerseys with the Herbalife TRILEAF Mark.  Written confirmation of this refusal was confirmed by adidas' counsel on February 12, 2010.

41.     adidas' refusal to print the Herbalife TRILEAF Mark has interfered with Herbalife's 2007 Sponsor Agreement and business relationship with AEG.

42.     adidas knew, and intended its conduct to, interfere with Herbalife's 2007 Sponsor Agreement and business relationship with AEG.

43.     adidas' actions constitute an improper means and/or purpose because adidas is misusing its trademarks to acquire a monopoly or broad commercial advantage beyond the scope of its trademark rights.

PAGE 11 -  DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
              COUNTERCLAIMS

44.    Federal statutory law, including 15 U.S.C. § 1117, provides a means of enforcement as well as remedies for alleged violation of trademark rights.  adidas' self-help method of interfering with Herbalife and AEG's business relationship is improper and in violation of the statutorily available trademark enforcement methods.

45.    adidas' interference with Herbalife's valid contract and business relationship with AEG is causing damages to Herbalife by forcing a breach of a contract to which adidas is not a party.

46.    As a result of adidas' interference with Herbalife's valid contract and business relationship with AEG, Herbalife has suffered damages in an amount currently unknown.

### THIRD COUNTERCLAIM

**(Violations of Unfair Competition Law
Under Cal. Bus. & Prof. Code § 17200 et. seq.)**

47.    Herbalife realleges and incorporates by reference paragraphs 1 through 46 of its counterclaims above.

48.    adidas has printed the Herbalife name and TRILEAF Mark on Galaxy jerseys in 2007, 2008, 2009, and 2010.  Now, in the final year of the 2007 Sponsorship Agreement between Herbalife and AEG, adidas suddenly decides to remove Herbalife's TRILEAF Mark from the Galaxy jerseys.

49.    adidas brought claims of trademark infringement in the eleventh hour of the 2007 Sponsorship Agreement to unfairly and unlawfully disrupt Herbalife's branding and marketing efforts.  adidas is unfairly impeding Herbalife's ability to advertise its brand, increase public awareness, and otherwise market itself through sponsorships, which are an increasingly popular form of global branding.

50.    adidas's conduct described in paragraphs 28-44 and 48-49 constitutes unlawful and unfair business practices as defined by California Business and Professions Code § 17200.

PAGE 12 -  DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
                     COUNTERCLAIMS

51.     As a result of adidas's conduct, Herbalife will suffer an unquantifiable amount of damages due to its unfair loss of branding and exposure unless adidas is enjoined from engaging in such unlawful and unfair business practices.   Injunctive relief is proper pursuant to Cal. Bus. & Prof. § 17203 because Herbalife has no adequate remedy at law and monetary damages will not prohibit adidas from engaging in the unlawful and unfair business practices described in this action.

**FOURTH COUNTERCLAIM**

52.     Herbalife realleges and incorporates by reference paragraphs 1 through 51 of its counterclaims above.

53.     adidas entered into a Strategic Alliance Agreement ("SAA") with Major League Soccer, LLC (already defined herein as "MLS") and Soccer United Marketing, LLC ("SUM") for the purpose of manufacturing and providing, among other things, "Authentic Competition Products" that include, but are not limited to, the official team uniforms worn or used by MLS teams and their players.   The term of the SAA runs from January 1, 2005, until December 31, 2014.

54.     Pursuant to the SAA, adidas is obligated to use its best efforts to ensure that each MLS team has a unique and distinct identity.   adidas must present any new uniform design concepts to the MLS and each respective MLS team for its feedback and approval.   No uniforms may be produced prior to adidas receiving MLS' written approval of such uniform designs.

55.     Pursuant to the SAA, the parties acknowledged that the MLS may sell sponsorship rights for the MLS team uniforms and that those sponsorship rights include placement of the sponsor name and/or trademark, logo, or other identification (defined in the SAA as "Sponsor Trademarks") on official MLS team jerseys so long as the sponsor is not an adidas competitor and that such Sponsor Trademarks comply with FIFA logo regulations. Pursuant to this Sponsor Trademark right, Herbalife and AEG entered into the 2007 Sponsor

PAGE 13 -  DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
              COUNTERCLAIMS

Agreement.  Herbalife is an intended beneficiary of the Sponsor Trademark rights provided under SAA.

56.    Since 2007 and through the 2011 MLS soccer season, adidas has been presented with a design for the Galaxy official team jersey that bears the MLS-approved Herbalife name and TRILEAF Mark .  Notwithstanding this MLS approval, adidas had the right to object to the design if it significantly diminishes, restricts, or limits adidas' Trademarks, including the TREFOIL Mark.  Upon information and belief, adidas did not object to the 2011 Galaxy design pursuant to the SAA's provisions.  Further, adidas did not raise any objection under the SAA for the Galaxy jersey designs the MLS approved for manufacture for the 2007 through 2010 MLS soccer seasons.  adidas' conduct over four years constitutes a course of performance that controls the interpretation of the SAA.

57.    Pursuant to the SAA, the parties agreed that any dispute regarding the interpretation, construction, or breach of the SAA shall be subject to non-binding confidential mediation in Portland, Oregon.  If the matter cannot be resolved through mediation, then the matter shall be submitted to binding arbitration before the American Arbitration Association in Portland, Oregon.  The parties also agreed to special dispute resolution procedures in the event adidas believed that MLS engaged in any Inconsistent Act, that is defined in the SAA as any act or omission that undermines or is inconsistent with the message that adidas is the exclusive supplier of athletic apparel.  These are the exclusive methods of dispute resolution under the SAA.

58.    Upon information and belief, adidas has not invoked the dispute resolution provisions required if the company believed the MLS approval of the 2011 Galaxy jersey design with the Herbalife name and TRILEAF Mark impaired or somehow compromised adidas' alleged trademark rights.

59.    With respect to the design for the Galaxy 2011 team jersey, adidas is objecting to inclusion of the Herbalife TRILEAF Mark despite MLS approval of the 2011 Galaxy jersey with

PAGE 14 - DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
            COUNTERCLAIMS

the Herbalife name and TRILEAF Mark.  adidas' failure to pursue the exclusive dispute resolution provisions under the SAA constitutes a material breach of the SAA.  If adidas does not manufacture and deliver a full complement of 2011 Galaxy jerseys with the MLS-approved Herbalife name and TRILEAF Mark, adidas' conduct will constitute a material breach of its obligations under the SAA.

60.    As an intended third-party beneficiary of the MLS rights under the SAA, Herbalife is entitled to insist that its third-party beneficiary rights provided under the SAA be adhered to and complied with by adidas.

61.    As a result of adidas's conduct materially breaching the SAA, Herbalife will suffer irreparable injury and damages unless adidas is required to comply with the obligations under the SAA and produce the 2011 Galaxy jerseys with the Herbalife name and TRILEAF Mark as the MLS has already authorized.

## PRAYER FOR RELIEF

WHEREFORE, Herbalife prays for relief as follows:

A.    That plaintiffs' complaint be dismissed with prejudice and that plaintiffs be awarded no relief;

B.    On Herbalife's first counterclaim, for judgment declaring that Herbalife has not breached the 1998 Settlement Agreement entered into between the parties;

C.    On Herbalife's second counterclaim, for injunctive relief preventing adidas from further interfering in Herbalife's contractual relations with Anschutz L.A. Soccer, Inc.;

D.    On Herbalife's second counterclaim, for an award of exemplary damages;

E.    On Herbalife's third counterclaim, for injunctive relief preventing adidas, and any person or entity acting on its behalf, from further engaging in the aforementioned unlawful and unfair business practices, which intentionally disrupt Herbalife's advertising, branding, and marketing efforts;

PAGE 15 -  DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
         COUNTERCLAIMS

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

F.     On Herbalife's fourth counterclaim, for injunctive relief enjoining adidas from manufacturing an unauthorized 2011 Galaxy jersey, and requiring adidas to adhere to its contractual obligation to produce the MLS-authorized 2011 Galaxy jersey with the Herbalife name and TRILEAF Mark, and requiring adidas to pursue the exclusive dispute resolution provisions in the event it disputes its obligation under the SAA to produce the MLS-authorized 2011 Galaxy jersey, and for an award of damages as may be allowed by contract or law.

G.     For an award of Herbalife's reasonable attorneys' fees, costs, disbursements, and other expenses; and

H.     Such other and further relief as the Court deems appropriate.

DATED:  April 5, 2010

LANE POWELL PC


By_____/s/  Parna A. Mehrbani_____
    Kenneth R. Davis II, OSB No. 971132
    Telephone:  503.778.2121
    Parna A. Mehrbani, OSB No. 053235
    Telephone:  503.778.2127

    M. John Carson, *Admitted Pro Hac Vice*
    Leila Nourani, *Admitted Pro Hac Vice*
    Michael J. Song, *Admitted Pro Hac Vice*
    **FOLEY & LARDNER LLP**
    Telephone:  213.972.4500

Attorneys for Defendant Herbalife International, Inc.


PAGE 16 -  DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND AMENDED
          COUNTERCLAIMS