IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ADIDAS AMERICA, INC** and
**ADIDAS AG**,

          Plaintiffs,

   v.

**HERBALIFE INTERNATIONAL, INC.**,

          Defendant.

No. CV 09-661-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiffs adidas America, Inc. and adidas AG (collectively "adidas") filed a Motion to Dismiss Defendant Herbalife's Fourth Counterclaim (Third-Party Beneficiary Counterclaim) (#120). Because Herbalife's Third-Party Beneficiary Counterclaim fails to allege facts establishing the intent of the signatories of the contract to provide a direct benefit to Herbalife, I GRANT the Motion to Dismiss Herbalife's Fourth Counterclaim (#120).

## BACKGROUND

    In 2005, adidas entered into a Strategic Alliance Agreement ("SAA") with Major League Soccer, LLC ("MLS") and Soccer United Marketing, LLC ("SUM") for the purpose of designating adidas as the sole provider of official MLS team uniforms, footwear, and other "authentic competition products." (Answer (#114) Countercl. ¶ 53.) Pursuant to the SAA, MLS and MLS teams may sell sponsorship rights for the team uniforms, including placement of

PAGE 1 - OPINION AND ORDER

sponsor logos on the uniforms, so long as the sponsor is not a competitor of adidas. (Answer (#114) Countercl. ¶ 55.)

In 2007, Herbalife and Anshutz Entertainment Group ("AEG"), owners of the L.A. Galaxy, entered into a sponsorship agreement. (Answer (#114) Countercl. ¶ 26.) Under this agreement, Herbalife's name and Tri-leaf Design trademark ("TRILEAF Mark") are to be prominently placed on Galaxy apparel. On June 12, 2009, adidas filed its Complaint (#1) for Trademark Infringement, Unfair Competition, Trademark Dilution, Deceptive Trade Practices, and Breach of Contract. Although adidas printed the TRILEAF Mark on the jerseys they produced from 2007-2010, adidas now refuses to print the Herbalife TRILEAF Mark on the 2011 jerseys because of the TRILEAF Mark's similarity to the adidas TREFOIL design mark. (Answer (#114) Countercl. ¶¶ 40, 48.) As of now, adidas does not intend to print the 2011 Galaxy jerseys with the requested TRILEAF Mark, absent a court order to the contrary.

Herbalife filed an amended Answer (#114) on April 5, 2010 and asserted a fourth counterclaim. The fourth counterclaim, the subject of this motion to dismiss, asserts that Herbalife, as a sponsor of an MLS team, is a third-party beneficiary of the SAA between adidas and MLS/SUM. (Answer (#114) Countercl. ¶¶ 52-61.) Herbalife argues that adidas failed to pursue the exclusive alternative dispute resolution ("ADR") methods provided in the SAA, which constitutes a material breach of contract between adidas and MLS/SUM. As a third-party beneficiary, Herbalife claims to have the right, as a result of this breach, to insist that the jerseys be produced with the Herbalife TRILEAF Mark, and additionally, that adidas and MLS/SUM resolve this dispute utilizing the ADR provisions provided in the SAA.

PAGE 2 - OPINION AND ORDER

## DISCUSSION

1. **Standard of Review**

When analyzing a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the court must accept as true the factual allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *Mishler v. Clift*, 191 F.3d 998, 1002 (9th Cir. 1999). Dismissal is improper unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to *offer* evidence to support the claims." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274-75 (9th Cir. 1993) *(*quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (emphasis in the original).

Generally, Rule 12(b)(6) does not permit a court to consider evidence beyond the pleadings. *See* Fed. R. Civ. P. 12(d). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Id.* A court may, however, consider "documents whose contents are alleged in a complaint and whose authenticity no party questions" without transforming a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

A redacted version of the SAA is attached to adidas's motion to dismiss through the Declaration of Chris McGuire (#122). The SAA is evidence outside the pleadings. The agreement is referenced throughout the counterclaim (Answer (#114) Countercl. ¶¶ 53-61), however, and neither party questions its authenticity. (*See* Def.'s Resp. (#127) 21.) Therefore, I may consider the

document without transforming adidas's motion to dismiss into a motion for summary judgment.

## II.     Third-Party Beneficiary

### A.     "Intended" or "Incidental" Beneficiary

Both parties agree that the SAA is governed by Oregon law. Oregon law recognizes three categories of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. *Sisters of St. Joseph of Peace, Health, and Hosp. Servs. v. Russell*, 867 P.2d 1377, 1380 (Or. 1994); RESTATEMENT (FIRST) OF CONTRACTS § 133 (1932); *see also Johnston v. Or. Bank,* 591 P.2d 746 (Or. 1979). Only "the first two categories of beneficiaries are entitled to enforce directly contractual promises *intended to be for their benefit*, even though they are strangers to the contract. Incidental beneficiaries are not so entitled." *Sisters of St. Joseph of Peace*, 867 P.2d at 1380 (emphasis added); *see also Northwest Airlines, Inc. v. Crosetti Bros., Inc.* 483 P.2d 70, 72-73 (Or. 1971). "In determining whether a party is more than an incidental beneficiary, the Oregon cases have focused on the intent of the promisee and the promisor." *Lord v. Parisi*, 19 P.3d 358, 362 (Or. Ct. App. 2001). Without intent of the promisee and promisor to create a benefit for a third party, any benefit garnered by the third party is merely incidental and does not entitle the third party to enforce any provision of the contract.

In addition to evincing the intent of the promisee and promisor to bestow a benefit, the contract must bestow a *direct* benefit to some third party to create rights enforceable by that party. *See Waterway Terminals Co. v. P. S. Lord Mech. Contractors*, 406 P.2d 556, 569 (Or. 1965) (emphasis added); *see also Snohimish Cnty. Pub. Util. Dist. No. 1 v. Pacificorp*, 745 F. Supp. 1581, 1584 (D. Or. 1990) (applying Oregon and Washington law, stating that "parties must intend that the promisor assume a direct obligation to the intended beneficiary.") Although a contract

may create a third-party beneficiary when analyzed as a whole, the third party may only enforce those provisions establishing a direct obligation. "A single contract may consist of a number of promises. One or more of them may require performance to the promisee; others may require performance to persons not parties to the contract." *Northwest Airlines*, 483 P.2d at 72 (quoting RESTATEMENT (FIRST) OF CONTRACTS § 133 (1932)). Before a third party can utilize the "exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that [the agreement] was intended for his direct benefit." *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912).

Therefore, in order to qualify as an intended third-party beneficiary and succeed in its opposition to this Rule 12(b)(6) motion, Herbalife must first allege facts sufficient to establish the *intent* of adidas and MLS/SUM to create a provision within the SAA that *directly* benefits Herbalife.

### III. Herbalife's Third Party Beneficiary Counterclaim

Herbalife advances two theories in support of its third-party beneficiary counterclaim. First, Herbalife argues that specific provisions in the SAA exhibit an intent on the part of adidas and MLS/SUM to bestow a direct benefit to Herbalife. Second, Herbalife contends that "interrelated provisions of the SAA" combine to create Herbalife's third-party beneficiary status. For the reasons set forth below, I find Herbalife cannot be an intended third-party beneficiary under either theory.

#### A. *Specific Provisions*

To prove its third-party beneficiary status, Herbalife must allege facts that establish itself as a third-party beneficiary to *each provision* it wishes to enforce. *See Northwest Airlines*, 483

P.2d at 72 (quoting RESTATEMENT (FIRST) OF CONTRACTS § 133 (1932)) (emphasis added). The SAA is a collection of provisions, and a third party may be a beneficiary of some of these promises and not of others. *See id.* Although Herbalife claims to be an intended third-party beneficiary of specific SAA provisions, an analysis of the provisions highlighted by Herbalife proves otherwise.

### 1.   SAA § 5.4

Central to Herbalife's argument is its assertion that § 5.4 of the SAA creates an intended beneficiary class of "Sponsor Trademarks," defined as companies who sponsor the MLS teams for whom adidas is making the jersey. Section 5.4 reads, in pertinent part:

> The parties acknowledge and agree that SUM/MLS may sell sponsorship including placement of the sponsor name and/or trademark, logo, other identification ("Sponsor Trademarks") of the MLS Team uniforms or training warm-ups or MLS Referees uniform or training warm-ups to a third party sponsor or sponsors so long as such sponsor is not an adidas Competitor and such Sponsor's Trademarks comply with FIFA logo regulations. In no event, however, shall such Sponsor Trademarks completely cover the adidas Trademarks (e.g., sleeve patch over the 3-Stripes mark is acceptable).

Nothing in the language of § 5.4 creates a "Trademark Sponsor" third-party beneficiary class. Section 5.4 merely reserves the right of MLS and MLS teams to sell sponsorship on the official uniforms. The agreement acknowledges MLS's right to sponsorship of the team uniforms, but does not explicitly or implicitly create any right or benefit to a future, unnamed sponsor. The analysis may well differ if the provision created a specified class of Trademark Sponsors and contained language indicating an intent to directly bequeath rights onto them. However, the SAA does not do so. The plain language of § 5.4 fails to support an intended third-party beneficiary claim that is plausible on its face.

    2.    **SAA § 4.2**

Section 4.2 of the SAA contains the requirement that, "adidas shall use best efforts to ensure that each MLS team has a unique and distinct identity." This provision, like § 5.4, creates a promise between adidas and MLS/SUM, not adidas and Herbalife, that adidas will do its best to create a unique identity for every MLS team. Any obligation under § 4.2 is owed by adidas to MLS/SUM, not to Herbalife. Nothing in this provision exhibits any intent of the parties to bestow a direct benefit upon a Trademark Sponsor or to confer a right upon a Trademark Sponsor to instruct adidas to produce the jersey it prefers.

    3.    **Alternative Dispute Resolution**

In §§ 4.2.3, 24, and 25 of the SAA, adidas and MLS/SUM establish certain ADR procedures for breach of the agreement. Section 4.2.3 allows adidas to object to "any MLS approval" that diminishes adidas Trademarks on authentic competition products. Sections 24 and 25 then provide two dispute resolution procedures and declare that, "[s]ubject to Section 25, both parties agree that the procedures outlined in this Section 24 are the exclusive methods of dispute resolution."

Just as in the sections discussed above, however, the rights and benefits of §§ 4.2.3, 24, and 25 belong to adidas and MLS/SUM, not Herbalife. In fact, Herbalife admits that "[s]ection 4.2.3 provides adidas with contractual rights with respect to protecting its trademarks." (Def.'s Response (#127) 9.) All the ADR provisions grant rights to adidas and/or MLS/SUM. Nowhere do the provisions mention any third party, let alone a right of a third party to force either signatory of the contract into ADR to settle a trademarking dispute.

PAGE 7 - OPINION AND ORDER

### 4. 2007 Sponsorship Agreement

The 2007 Sponsorship Agreement between AEG and Herbalife requires the Galaxy to use the Herbalife name and TRILEAF Mark on all jerseys authorized by the Galaxy. (Answer (#114) Countercl. ¶¶ 26-31.) Herbalife contends that adidas's breach of the SAA should be analyzed in light of this agreement. This line of reasoning, however, fails to recognize that the SAA and 2007 Sponsorship Agreement are two separate and distinct contracts. In fact, Herbalife's Second Counterclaim against adidas alleges Intentional Interference with Contractual Relations with regard to the 2007 Sponsor Agreement. In that claim, however, Herbalife can assert itself as a signatory of the 2007 Sponsor Agreement; here, Herbalife cannot. The promises made in the 2007 Agreement between AEG and Herbalife do not transform Herbalife into an intended third-party beneficiary of the SAA, a contract between MLS/SUM and adidas.

### B. *The SAA Construed as a Whole*

Although no individual provision in the SAA supports Herbalife's third-party beneficiary counterclaim, Herbalife asserts that a number of "interrelated provisions of the SAA" combine to give rise to its third-party beneficiary status. (Def.'s Resp. (#127) 12.) Although "a third party beneficiary must appear from the terms of the contract construed as a whole," the signatories to the contract must still "intend that the promisor assume a direct obligation to the intended beneficiary." *Snohimish*, 745 F. Supp. at 1584. Herbalife fails to establish the intent of adidas and MLS/SUM to confer a direct benefit upon Herbalife, even when assessing the SAA as a whole. "In the absence of a direct benefit, the third party beneficiary is merely an 'incidental' beneficiary which acquires no rights under the contract." *Id.*

## CONCLUSION

For the foregoing reasons, I GRANT adidas's Motion to Dismiss Defendant's Fourth Counterclaim (Third-Party Beneficiary Counterclaim) (#120).

IT IS SO ORDERED.

DATED this   10th   day of August, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge
