IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ADIDAS AMERICA, INC. and ADIDAS AG,**

    Plaintiffs,

    v.

**HERBALIFE INTERNATIONAL, INC.,**

    Defendant.

No. CV 09-661-MO

OPINION AND ORDER

**MOSMAN, J.**,

Adidas seeks summary judgment on Herbalife's two remaining counterclaims. The first is for intentional interference with contractual relations, business relations, or prospective economic advantage ("intentional interference"). The second is for violations of unfair competition law ("unfair competition") arising under California Business and Professions Code § 17200 ("§ 17200").

I previously found that Herbalife breached the 1998 Settlement Agreement ("1998 Agreement" or "the agreement") by placing its name and Tri-Leaf design trademark ("Tri-Leaf Mark") on the Galaxy MLS ("Galaxy") team's jerseys. This finding prevents Herbalife from satisfying all the required elements of its intentional interference counterclaim. The unfair competition claim necessarily fails because it is derivative of the intentional interference counterclaim. I find that Adidas is entitled to judgment as a matter of law and grant its motion for summary judgment.

1 – OPINION AND ORDER

## BACKGROUND

Adidas and Herbalife decided in the 1998 Agreement that Herbalife would not use its Tri-Leaf Mark on items Adidas considered its core goods, such as sports apparel and footwear. Tr. [224] 5-6. Since 2005, Adidas has been the sole provider of Major League Soccer, LLC ("MLS") team uniforms, footwear, and other items. Answer to Compl. [114] 13. MLS and its teams sell sponsorship rights for team uniforms, including sponsor logos on uniforms if the sponsor is not an Adidas competitor. *Id*.

In March 2007, Herbalife entered into one of these sponsorship agreements with the owner of the Galaxy, Anschutz Entertainment Group ("AEG"). *Id*. at 10. The agreement allows Herbalife to place the Tri-Leaf Mark and Herbalife name on the front of all Galaxy jerseys. *Id*.

Adidas knew of Herbalife's sponsorship agreement with the Galaxy. *Id*. It printed Herbalife's logo and name on the Galaxy jerseys from 2007–2010. *Id*. at 12. Beginning in December 2009, Adidas challenged Herbalife's use of the Tri-leaf mark on the Galaxy jerseys, ultimately filing an action for trademark infringement and other claims. *Id*. at 10.

Herbalife responded with four counterclaims on April 5, 2010. Answer to Compl. [114]. The first and fourth counterclaims have already been dismissed. Op. and Order [159]; Op. and Order [223]. The intentional interference counterclaim asserts that Adidas's refusal to include Herbalife's name and logo on the Galaxy jerseys improperly obstructs Herbalife's economic relationship with the Galaxy. Answer to Compl. [114] 11. The unfair competition counterclaim argues Adidas unfairly and unlawfully disrupts Herbalife's branding and marketing efforts. *Id*.

## DISCUSSION

The central issue in these motions is whether Herbalife's intentional interference and unfair competition counterclaims show a genuine dispute as to any material fact. I find Herbalife fails to satisfy all the elements of intentional interference and unfair competition counterclaims.

I.  **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c)(1) says that a party arguing a fact that "cannot be or is genuinely disputed" must support the assertion by citing to particular parts of materials in the record or showing the cited materials do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). The Court may grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The U.S. Supreme Court has said Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

II. **Intentional Interference Counterclaim**

A. *Herbalife's Name and Logo on the Galaxy Jerseys Breach the 1998 Agreement*

The main contention between Adidas and Herbalife is about what I said and meant on the question of breach at the September 14, 2010, and February 24, 2011, hearings. Herbalife argues "the Court never made any finding as to whether use of the Herbalife Tri-Leaf logo on the Galaxy jerseys with the word 'Herbalife' constituted a breach of the 1998 Settlement Agreement." Opp'n to Summ. J. [230] 1. Adidas argues I found the Herbalife logo on the Galaxy jersey breached the 1998 Agreement. Reply Mem. in Supp. of Summ. J. [232] 1. Adidas is correct. I found in the February 24, 2011, hearing that Herbalife's placement of its name and Tri-Leaf Mark on the Galaxy jerseys violates the terms of the parties' 1998 Agreement.

At the September 14, 2010, hearing, I said, "I believe that the better of the two arguments actually ends up being Adidas's argument, the only one that better gives effect to the entire contract and its obvious purpose." Tr. [168] 21.  I also said to the parties: "I've essentially told you that I think Adidas is right, and that's how this is going to go unless Herbalife comes up with something in discovery." *Id*. at 27.  Herbalife did not come up with something in discovery. After hearing argument on February 24, I granted Adidas's motion for partial summary judgment on the breach counterclaim.  Tr. [224] 25.

The context of the two hearings shows I ruled specifically on the issue of whether the Galaxy jerseys with Herbalife's name and logo violated the 1998 Agreement.  The original September 24, 2010, hearing also considered other Herbalife product lines like sports apparel and footwear for the public.  Tr. [168] 5-6.  Discovery on those items is being produced.  *Id*. at 8. My language about determining the scope of breach refers to the broader question of whether other Herbalife apparel items violate the 1998 Agreement.  Tr. [224] 25.

The specific question of whether the Galaxy jerseys breached the 1998 Agreement became settled when Herbalife failed to uncover additional information.  *Id*.  I found that Herbalife's name and logo on the Galaxy jerseys violates the 1998 Agreement with Adidas, in part because Herbalife agreed the jerseys constitute sports apparel.  Tr. [168] 8-9.

### B.     *Herbalife Fails to Establish All the Elements of Intentional Interference*

I grant summary judgment on Herbalife's counterclaim for intentional interference with economic relations because it fails to satisfy all the elements required under Oregon law.  Under Oregon law, a plaintiff must prove all the intentional interference counterclaim elements.[1]

---

[1] "(1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and

4 – OPINION AND ORDER

Herbalife fails to satisfy two elements: (1) "improper means or for an improper purpose"; and (2) "by a third party."

### 1. Improper Means or for an Improper Purpose

Oregon courts use the *Restatement (Second) of Torts* (1979) to evaluate claims for intentional interference with economic relations. *Douglas Med. Ctr., LLC v. Mercy Med. Ctr.*, 125 P.3d 1281, 1287 (Or. Ct. App. 2006). The *Restatement* requires defendants to engage in some inherently wrongful action to find the intentional interference was accomplished through improper means or for an improper purpose.[2] The Oregon Supreme Court held that defendants might satisfy the *Restatement* by showing defendant's conduct was "wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Or. 1978).[3]

Even if Adidas intentionally interfered with Herbalife's sponsorship agreement, Adidas has not done so through improper means or for an improper purpose. My prior finding that Herbalife, not Adidas, breached the 1998 Agreement is dispositive on this issue. Adidas is not acting by wrongful means because it seeks to enforce its rights under the 1998 Agreement. Rather, Adidas endeavors to advance its legitimate interest in manufacturing products in accordance with its own contractual and intellectual property interests. Advancing one's

---

damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 901 P.2d 841, 844 (Or. 1995) (citing *Straube v. Larson*, 600 P.2d 371 (Or. 1979)).

[2] "If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is endeavoring to advance some interest of his own, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff the interference may be found to be not improper." *Restatement (Second) of Torts* § 766 cmt. j (1979).

[3] Further, "[c]ommonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Top Serv.*, 582 P.2d at 1371 n. 11.

5 – OPINION AND ORDER

legitimate interest is not wrongful by statute, common law, or an established standard of Adidas's profession. Herbalife fails to satisfy all the elements of its claim, so Adidas is entitled to summary judgment.

### 2. By a Third Party

Even if Herbalife had established wrongful conduct by Adidas, Herbalife also fails to establish that Adidas was truly a "third party." Under Oregon law, "[t]he tort of intentional interference with economic relations 'serves as a means of protecting contracting parties against interference in their contracts from outside parties.' . . . The tort thereby protects the interests of a plaintiff from 'intermeddling strangers.'" *Wieber v. FedEx Ground Package Sys., Inc.*, 220 P.3d 68, 77 (Or. Ct. App. 2009) (quoting *McGanty*, 901 P.2d at 845). Parties not specifically named in the contract do not necessarily become "intermeddling strangers." The Ninth Circuit found that a defendant is not a stranger to a contract if the contract requires the defendant's cooperation. *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 834 (9th Cir. 2001).[4] Where a defendant "has a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract itself or to the business relationship." 44B *Am. Jur. 2d Interference* § 7.

Herbalife disputes this interpretation of "stranger," arguing a stranger is synonymous with a non-contracting party. Opp'n to Mot. for Summ. J., [230] 17. Herbalife cites *Applied Equipment Corporation v. Litton Saudi Arabia Ltd.*, 869 P.2d 454 (Cal. 1994), for the proposition that the "tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate [social or economic] interest in the scope or course of the contract's performance."

---

[4] The court in *Marin* was analyzing California law, but I find the analysis persuasive here.

*Id*. at 459. Herbalife argues that one must be a party to a contract to have a "legitimate interest" in a contract. I reject Herbalife's argument.

Adidas has a legitimate interest in Herbalife's contract with AEG. First, as the sole manufacturer of all MLS team jerseys including the Galaxy, Adidas's cooperation with the Galaxy and Herbalife is essential for Herbalife's sponsorship agreement. Answer to Compl. [114] 13. Adidas must manufacture the jerseys for performance of Herbalife's contract with AEG. Adidas demonstrated its clear involvement in and prior cooperation with the contract when it printed Herbalife's logo and name on the Galaxy jerseys from 2007–2010. *Id* at 12.

Second, even if Adidas were not the sole manufacturer of MLS jerseys, its 1998 Agreement with Herbalife creates a legitimate interest in Herbalife's use of the Tri-Leaf Mark. Adidas and Herbalife agreed Herbalife would not use its Tri-Leaf Mark on sports apparel that competes with core Adidas goods. Tr. [224] 5-6. This prior agreement alone gives Adidas justification to be legitimately interested in Herbalife's use of its logo. Adidas possesses both an "economic" and "social" interest in the scope and performance of Herbalife's contract, eliminating the possibility that it is a third party to the economic relationship.

### C. There Is No Material Difference between Oregon and California Intentional Interference Law

Adidas and Herbalife dispute whether Oregon or California intentional interference law should be used to evaluate the counterclaim. Herbalife argues that California intentional interference law should apply because Adidas "illicitly disrupted" the contractual relationship between Herbalife and AEG.[5] Opp'n to Mot. for Partial Summ. J. [230] 19. Herbalife

---

[5] Under California law, establishing a claim for intentional interference with contractual relations requires the plaintiff to prove: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Integrated Healthcare*

7 – OPINION AND ORDER

recommends California law because the contractual relationship is "overwhelmingly connected" to California via both parties' business contacts. *Id.*

I need not evaluate this argument.[6] Regardless of how significant the contacts are, Oregon conflict of law precedent directs courts to apply Oregon law if there is no material difference between the two (a "false conflict"). *Angelini v. Delaney*, 966 P.2d 223, 227 (Or. App. 1998) (citing *Erwin v. Thomas*, 506 P.2d 494 (Or. 1973)). A false conflict is present if the laws of both states on the same set of facts "would produce the same decision in the lawsuit . . . ." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 839 n. 20 (1985).

There is no material difference (relevant here at least) between the intentional interference law of Oregon and California, and I reach the same result regardless of which version I apply. Herbalife cites no authority for the proposition that, even under California law, a party who breaches a contract may sue the wronged party to that contract for exercising its legitimate interests under that contract. Herbalife's breach of the 1998 Agreement precludes that argument's validity. I implicitly found Adidas did not breach Herbalife's contract with AEG by ruling Herbalife breached the 1998 Agreement. If I found that Adidas's refusal to manufacture the Galaxy jerseys breached Herbalife's contract, it would effectively authorize Herbalife's intended Tri-Leaf Mark use in violation of the 1998 Agreement. I reject this position because it contradicts my earlier finding.

Herbalife fails to satisfy necessary intentional interference elements under California law, so I arrive at the same result regardless of which state's law I apply. The false conflict between

---

*Holdings, Inc. v. Fitzgibbons*, 44 Cal. Rptr. 3d 517, 532 (Cal. Ct. App. 2006) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990)).

[6] To the extent this argument repeats Herbalife's earlier affirmative defenses of laches, waiver, and estoppel, I have already granted summary judgment on those defenses. Tr. [224] 25.

the laws eliminates any need to measure the respective contacts to California and Oregon. *Erwin*, 506 P.2d 497-98.

### III.     Unfair Competition Counterclaim

####     A.      *The Counterclaim Is Derived from the Intentional Interference Counterclaim*

Herbalife's unfair competition counterclaim relies on California Business and Professions Code § 17200.[7] The success of Herbalife's unfair competition counterclaim depends on the validity of the intentional interference counterclaim.

In defending the unfair competition counterclaim, Herbalife explicitly outlines its dependence on the intentional interference counterclaim: "Adidas's intentional interference with Herbalife's contract with the Galaxy constitutes an intentional interference with economic relations under California (and Oregon) law. Consequently, Adidas's conduct is unlawful and violates the 'unlawful business act' prong of California's UCL." Opp. To Mot. for Summ. J. [230] 21. The unfair competition law borrows violations of other laws and treats them as independently actionable. *Cel-Tech Comm'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). This is true for each of Herbalife's specific claims under the "unlawful" and "unfair" competition prongs of § 17200. *Ingels v. Westwood One Broad. Serv., Inc.*, 28 Cal. Rptr. 3d 933, 938 (Cal. Ct. App. 2005); *Cel-Tech*, 20 Cal. 4th at 187.

####     B.      *The Counterclaim Fails as a Matter of Law*

The unfair competition counterclaim's validity hinges on the success of its intentional interference counterclaim both factually and legally. Factually, the unfair competition counterclaim requires that Adidas breached Herbalife's agreement with AEG. Legally, Herbalife would require a finding that Adidas violated intentional interference law because violation of

---

[7] The code defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Cal. Bus. & Prof. Code* § 17200 (West 2008).

9 – OPINION AND ORDER

another law is necessary to support § 17200 actions. *Ingels*, 28 Cal. Rptr. 3d at 938. My previous findings on the intentional interference counterclaim are dispositive. I found that Adidas did not breach Herbalife's AEG agreement because of Herbalife's 1998 Agreement breach. Further, I found that Herbalife failed to meet all the elements of the intentional interference counterclaim.

Herbalife's failure on the intentional interference counterclaim eliminates the unfair competition counterclaim. Herbalife fails to show a prior legal violation that would justify the § 17200 claim and the derivative nature of the claim prevents Herbalife from independently meetings its elements. Adidas is entitled to judgment as a matter of law.[8]

## CONCLUSION

Because I find Herbalife fails to show there is a genuine dispute as to any material fact, I GRANT Adidas's Motion for Partial Summary Judgment [9].

IT IS SO ORDERED.

DATED this   29th   day of July, 2011.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

---

[8] Even if Herbalife's intentional interference counterclaim succeeded, Herbalife would still fail on the unfair competition counterclaim. When evaluating §17200 violations, the Ninth Circuit requires claimants to allege the defendant engaged in business practices that are forbidden by statute, regulatory law, or court-made law. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (2010). For the purposes of § 17200, "court-made" law has been interpreted as "a violation of a prior court order." *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 n.22 (C.D. Cal. 2003). Common law violations are insufficient to state a claim under § 17200. *Shroyer*, 622 F.3d at 1144. Therefore, Herbalife's common law intentional interference counterclaim would not be a valid basis for § 17200 liability, even if it had been successful.

10 – OPINION AND ORDER